CARLOS LUGO FIGUEROA, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE HUMACAO, HON. LUIS PEREYÓ, JUEZ, demandado; EL PUEBLO DE PUERTO RICO, interventor.

*Número:* O-69-207        *Resuelto:* 25 de junio de 1970

*Julio C. Rivera*, abogado del peticionario; *Gilberto Gierbolini, Procurador General*, y *Peter Ortiz, Procurador General Auxiliar*, abogados del interventor.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Pasados diecisiete minutos luego de haberse retirado a deliberar, el jurado regresó a Sala y le informó al juez que presidió la vista, que no podía ponerse de acuerdo para rendir un veredicto. Sin el juez inquirirlo, uno de los jurados le informó que estaban divididos, siete para absolver y cinco para condenar. El juez comentó que era impropio revelar esa información y que procedería a disolver el jurado. La defensa se opuso. Insistió en que el jurado siguiera deliberando. Pero eso no obstante, el juez lo disolvió. (¹) Re-

---

(¹) Así se desarrolló el incidente:

"LA CORTE:—

Pase el jurado.

¿Se acepta que el jurado es el mismo y que está completo?

"LIC. RIVERA:—

Si, aceptamos, Vuestro Honor.

"LA CORTE:—

¿Las damas y caballeros del jurado han llegado a un veredicto?

"SR. RAMÓN ROURE (Presidente del Jurado)

R.—No Señor Juez, no hemos podido llegar a un acuerdo.

"LA CORTE:—

¿Qué no han podido llegar a un acuerdo?

currió el acusado ante este Tribunal para revisar esa actuación. Nos negamos a hacerlo por resolución que al calce se copia. (²)

"SR. ROURE:—
No, señor.
"LA CORTE:—
Es temprano todavía.
"SR. ROURE:—
Bueno, llegamos a un acuerdo de siete a cinco, siete culpables y cinco.
"SRA. MARÍA DELGADO HERNÁNDEZ (Jurado)
Siete inocentes y cinco culpables.
"OTROS JURADOS:—
Siete inocente y cinco culpable.
"LA CORTE:—
Entonces, tenemos que suspender la vista del caso hasta nuevo señalamiento.
"LIC. RIVERA:—
¿Entonces, el Tribunal está interpretando en este momento la disolución del jurado?
"LA CORTE:—
Estoy hablando más, ellos como son nuevos, pero nunca se debe hablar de cómo estaban, ni ocho a siete, ni cinco a dos.
"FISCAL:—
Nosotros íbamos a pedir en este momento, Vuestro Honor, la disolución del Jurado.
"LIC. RIVERA:—
Nosotros vamos a objetar, el Tribunal tiene discreción, debe resolver, puede dar instrucciones, se pueden ir y estar una hora más, pueden volver mañana y continuar deliberando, pero no disolver el jurado por eso.
"LA CORTE:—
Yo no he interpretado nada, pero el jurado no puede decir estamos tanto a tanto. El Tribunal disuelve el jurado.
"LIC. RIVERA:—
Este jurado salió a las 4:48 y regresó a Sala a las 5:05, entendemos que este jurado lo que necesita en este instante es, si necesita instrucciones adicionales, o un tiempo adicional, un tiempo adicional es lo que procedería.
"LA CORTE:—
Pero nunca debe el jurado decir cómo estaban, cinco a tanto, eso no debió haberlo dicho.
Entiende el Tribunal que debe disolver el jurado, y lo disuelve.
"LIC. RIVERA:—
Con nuestra objeción. Nosotros entendemos que el Jurado está debidamente constituido, y que esa manifestación no es justa causa para su disolución."

(²) Dispone así:
"Considerada detenidamente la anterior solicitud de auto de certiorari

Señalado el caso de nuevo, se planteó la defensa de exposición anterior. El mismo juez que presidió la vista anterior conoció de este planteamiento. Lo denegó. Accedimos a revisar su resolución.

■ La garantía de no ser procesado dos veces por el mismo delito tiene profunda raíz en el procedimiento criminal de Occidente. Friedland, *Double Jeopardy* (Oxford Press 1969). Se trazan sus inicios a Grecia y Roma y a la *common law* de la Gran Bretaña, *Benton* v. *Maryland*, 395 U.S. 784 (1969), donde el Tribunal Supremo Federal por considerar dicha garantía fundamental, la aplicó a los estados a través de la Decimocuarta Enmienda. Ver además *Price* v. *Georgia*, 398 U.S. 323 resuelto el 15 de junio de 1970. Fundamental también la ha considerado el pueblo de Puerto Rico al incorporarla a nuestra Carta de Derechos. Dispone la Sec. 11 del Art. II que "Nadie será puesto en riesgo de ser castigado dos veces por el mismo delito".

En *Pueblo* v. *Arteaga Torres*, 93 D.P.R. 148 (1966) y *Piñero Agosto* v. *Tribunal Superior*, 94 D.P.R. 204 (1967), expusimos los conceptos fundamentales de la defensa de doble exposición citando la jurisprudencia más reciente del Tribunal Supremo de los Estados Unidos.

■ Es claro que cuando se disuelve un jurado antes de rendir veredicto no se puede procesar de nuevo al acusado a menos que éste hubiere consentido a la disolución, o que la misma procediese por concurrir las circunstancias que

---

y examinados los documentos que a ella se han unido y tomando en cuenta que ante el Tribunal recurrido aún no se ha pedido formalmente por el acusado Carlos Lugo Figueroa la desestimación de la acusación por haber estado expuesto a ser convicto del delito que se le imputa bajo la Regla 64 (e) de Procedimiento Criminal, 1963, con motivo de lo ocurrido en el juicio celebrado el 10 de setiembre de 1969, en la causa criminal Núm. M-69-58, por homicidio involuntario, que se tramita en su contra, se deniega, por ahora, la expedición del auto."

se enumeran en la Regla 144 de las de Procedimiento Criminal de 1963. Disolver un jurado sin autorización legal equivale a una absolución. Ver *Paulson* v. *Superior Court of El Dorado County*, 372 P.2d 641 (Cal. 1962).

Dispone la Regla 144:

"El tribunal podrá ordenar la disolución del jurado antes del veredicto en los siguientes casos:

(a) Si antes de retirarse el jurado a deliberar, se hiciere imposible la continuación del proceso a consecuencia de la enfermedad o muerte de uno de los miembros del jurado, a menos que el tribunal resolviere tomarle juramento a otro miembro del jurado en sustitución del primero y empezar el juicio de nuevo.

(b) Si después de retirarse el jurado a deliberar, se hiciere imposible la continuación del proceso a consecuencia de la enfermedad o muerte de un miembro del jurado o sobreviniere cualquier otra circunstancia que les impidiera permanecer reunidos.

(c) Si la deliberación se prolongare por un lapso de tiempo que el tribunal estimare suficiente para concluir de una manera clara y evidente no haber posibilidad de que el jurado pudiera llegar a un acuerdo.

(d) Si se hubiere cometido algún error o se hubiere incurrido en alguna irregularidad durante el proceso que, a juicio del tribunal le impidiere al jurado rendir un veredicto justo e imparcial.

(e) Por cualquiera otra causa si las partes consintieren en ello.

En todos los casos en que el jurado fuere disuelto según lo provisto en esta regla, la causa podrá ser juzgada nuevamente."

Vemos que el inciso (d) de la Regla 144 dispone que si a juicio del tribunal "se hubiere cometido algún error o se hubiere incurrido en alguna irregularidad durante el proceso que . . . le impidiese al jurado rendir un veredicto justo e imparcial" el tribunal podrá ordenar la disolución del jurado antes del veredicto.

En *Pueblo* v. *Rivera*, 77 D.P.R. 664 (1954), expresamos que no constituía error el que el jurado expresara el estado del balotaje sin indicar a favor de qué lado se inclinaba la mayoría. En el escolio 4 de esa opinión, a la pág. 670, expresamente salvamos la cuestión de si constituía error el que el jurado espontáneamente informara cuántos de ellos estaban por condenar y cuántos por absolver.

En las jurisdicciones estatales y en la federal hay una línea de autoridades que sostienen que constituye error fatal el que el juez que preside la vista solicite información sobre la forma en que están divididos los jurados especificando cuántos están para condenar y cuántos para absolver. [3] El caso principal que esto sostiene es el de *Brasfield* v. *United States*, 272 U.S. 448 (1926). Esta doctrina ha sido muy criticada. Wigmore, en su conocido tratado la condena. VIII Wigmore on *Evidence*, pág. 680, escolio 3 (ed. 1940). Y en reciente artículo se hace referencia a que la mayoría de los comentaristas y jueces la consideran sin fundamento legal alguno. *On Instructing Deadlocked Juries*, 78 Yale L.J. 100, 132 (1968). En *Beale* v. *United States*, 263 F.2d 215 (5th Cir. 1959), el tribunal expresó que la regla de *Brasfield* no era inflexible y que había que considerar si el acusado se perjudica. Ver además *Butler* v. *United States*, 254 F.2d 875 (5th Cir. 1958). Véase *United States* v. *Rogers*, 289 F.2d 433 (4th Cir. 1961) donde se expone lo conveniente que es para el juez conocer el estado de las deliberaciones, con el objeto de instruir adecuadamente al jurado para que éste pueda rendir un veredicto. Ver además *United States* v. *Rao*,

---

[3] Generalmente esta cuestión se ha planteado en apelación como error para revocar. Son contados los casos en que el juez que preside el juicio disuelve el jurado al conocer la información. De hecho, en nuestro estudio y consideración de este caso sólo hemos encontrado dos casos en donde el juez disolvió el jurado: el caso de *Paulson* v. *Superior Court of El Dorado County*, 372 P.2d 641 (Cal. 1962) y el de *Mullin* v. *United States*, 356 F.2d 368 (D.C. Cir. 1966), que se mencionan en la opinión.

394 F.2d 354 (2d. Cir. 1968) y *United States* v. *Samuel Dunkel & Co.,* 173 F.2d 506 (2d Cir. 1949).

Sostienen otras autoridades que el hecho de que los jurados espontáneamente, sin haberlo solicitado el juez, divulguen la división de su balotaje no constituye error o irregularidad que justifique la disolución del jurado. El que se conozca esa información no tiene el efecto de impedir que el jurado rinda un veredicto justo e imparcial. *United States* v. *Meyers,* 410 F.2d 693, 697 (2d Cir. 1969); *Huffaker* v. *State,* 168 S.E.2d 895 (Ga. 1969); *State* v. *Smith,* 431 S.W.2d 74, 86 (Mo. 1968); *People* v. *Wooley,* 15 Cal. App.2d 669 (1936); *People* v. *Piscitella,* 266 Pac. 349 (Cal. 1928); *People* v. *Hall,* 25 Cal. App.2d 336 (1938); *Bowen* v. *United States,* 153 F.2d 747 (8th Cir. 1946), *cert. den.* 328 U.S. 835 (1946).

La razón que se expone para sostener que constituye error el que el juez solicite la información, es que al instruir al jurado para que continúe deliberando, de hecho se está coaccionando a la minoría de los jurados para que se unan y concurran con la mayoría. Si es válido el fundamento cuando el juez solicita la información lo es también en el caso en que los jurados espontáneamente la ofrecen. No hay razón para que los de la minoría se sientan coaccionados en el primer caso y no en el segundo. No hay base alguna para hacer la distinción. Es igual si el juez conoce el estado de la división porque solicitó la información o si la obtuvo porque el jurado espontáneamente la dio. Nota, *The Allen Charge,* 53 Va. L. Rev. 123, 132 (1967). La realidad es que no hay base razonable para sostener que porque el juez conozca de la división del jurado la minoría se sienta coaccionada si el juez los exhorta a continuar deliberando para ver si pueden ponerse de acuerdo y rendir un veredicto. Por otro lado se sostiene, que es conveniente que el juez conozca del estado de las deliberaciones con el objeto de que pueda instruir al jurado para que rinda un veredicto.

El que se rinda un veredicto beneficia al Estado y al acusado por igual. El Estado se beneficia porque no tiene que incurrir en el esfuerzo y los gastos que un nuevo juicio conlleva, además de que no se aumenta la congestión del calendario. El acusado se libra de tener el agobio de una acusación pendiente y los gastos y molestias que entrar de nuevo a juicio conlleva. *United States* v. *Rogers*, supra; *State* v. *Doan*, 30 N.W.2d 539 (Minn. 1947).

Cada caso debe considerarse por sus méritos particulares. Hay que considerar el tiempo que el jurado ha estado deliberando, y el tenor de las instrucciones que el juez ha transmitido luego de conocer la división del jurado. Si un jurado ha estado deliberando por un tiempo considerable y luego del juez conocer la forma en que están divididos, insiste en que deben llegar a un veredicto, ese solo hecho en ese caso específico, pudiera constituir coacción que vicie el veredicto. Pero ciertamente en un caso como el que ahora nos ocupa, no puede considerarse coaccionado un jurado, que apenas empezando a deliberar (sólo 17 minutos habían transcurrido desde que abandonó la sala de sesiones), el juez lo exhorte luego de conocer como están divididos, a que continúe deliberando. En *Beale* v. *United States*, supra, la Corte distinguió el caso de *Brasfield* por el hecho de que al conocer la información el jurado sólo había estado deliberando quince minutos.

El Juez Presidente Traynor, de la Corte Suprema de California, en el caso de *Paulson* antes citado, considera una situación parecida a la del presente caso en la que el jurado espontáneamente informó que estaban siete para absolver y cinco para condenar (con la diferencia de que el jurado allí había estado deliberando por cinco horas, y en éste apenas había comenzado a deliberar), y sostiene que disolver el jurado en esas circunstancias equivale a una absolución del acusado y procede sostener la defensa de exposición anterior cuando se le procesa de nuevo.

El caso de *Mullin* v. *United States*, 356 F.2d 368 (D.C. Cir. 1966), opinión del Juez Presidente de los Estados Unidos mientras servía en la Corte de Apelación, en que descansa el Procurador General, es fácilmente distinguible del presente. En el primer juicio celebrado a *Mullin*, el presidente del jurado le informó al juez espontáneamente cómo estaba dividido e inmediatamente el juez disolvió el jurado. La defensa no se opuso y al celebrarse el segundo juicio, estando el acusado representado por el mismo abogado no levantó la defensa de exposición anterior. Al ser condenado en el segundo juicio apeló y señaló como error que se había violado la disposición de la Quinta Enmienda que prohíbe que una persona sea procesada dos veces por el mismo delito. Al resolver que no se había cometido el error y que procedía confirmar la sentencia, cuidadosamente el Juez Burger aclara que el abogado no se opuso a la disolución del jurado, que el mismo abogado defendió al acusado en ambos casos y que en el segundo no se le planteó la defensa de exposición anterior. Ver además *United States* v. *Chase*, 372 F.2d 453, 466 (4th Cir. 1967).

Así la única cuestión que hay que tener presente es que las instrucciones cumplan con la pauta que expusimos en *Pueblo* v. *Rivera*, supra, al efecto de que no se coaccione al jurado para que rinda un veredicto. Ver además *People* v. *Baumgartner*, 332 P.2d 366 (Cal. 1958); Anotación, *Dissenting Jurors, Instructions*, 100 A.L.R.2d 177 (1965). En *Wissel* v. *United States*, 22 F.2d 468 (2d Cir. 1927), se establecen las normas que deben seguir los jueces al instruir a un jurado en estas circunstancias. Disolver el jurado en las circunstancias en que lo fue en el caso de autos perjudicó seria y fundamentalmente al acusado. Al celebrársele el juicio fue expuesto a ser condenado y, apenas comenzado a deliberar el jurado, porque espontáneamente informó que siete estaban para declararlo inocente, el juez lo disuelve.

El juez en estas circunstancias no actuó para garantizarle los derechos del acusado. Ver *Paulson,* supra. En las circunstancias que concurrían, un caso sencillo de homicidio involuntario, en el que el jurado apenas había tenido tiempo para comenzar sus deliberaciones, procedía que el juez le instruyera para que siguieran deliberando, tal como lo demandó el acusado. Ver *People* v. *Fain,* 345 P.2d 305 (Cal. 1959). Lo importante era, como antes apuntamos, que al instruirlos no los coaccionara para hacerles llegar a un veredicto. La disolución del jurado en las circunstancias del presente caso no estaba justificada. *Erró el juez de instancia al declarar sin lugar la moción de exposición anterior.*

Se dictará sentencia de conformidad.

El Juez Presidente Señor Negrón Fernández no intervino. El Juez Asociado Señor Santana Becerra concurre en voto separado.

—O—

Voto concurrente del Juez Asociado Señor Santana Becerra
San Juan, Puerto Rico, 25 de junio de 1970

Concurro plenamente con el Tribunal que hoy da vigencia a la garantía constitucional de un acusado a no ser puesto en riesgo de ser castigado dos veces por el mismo delito. Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 11.

En varias ocasiones me he manifestado en contra de lo que para mí ha sido en años recientes una peligrosa tendencia de la Magistratura de Primera Instancia a disolver jurados en un proceso antes del veredicto para comenzar de nuevo, producto, en mi opinión, dicha tendencia, de la omisión de establecer el apropiado equilibrio entre las Reglas 38(d) y 144(d) y (e) de Procedimiento Criminal de 1963 de un lado, y la anterior garantía constitucional del

otro, sin reconocerle a ésta su mayor jerarquía, en el uso de la facultad que las referidas Reglas permiten ejercer a los jueces. Véanse mis expresiones en desacuerdo en *Ortiz Báez* v. *Tribunal Superior*, 98 D.P.R. 261 (1970) ; en *Ríos Mora* v. *Tribunal Superior*, 95 D.P.R. 117, pág. 126 (1967), y mis expresiones mayoritarias en *Pueblo* v. *Arteaga Torres*, 93 D.P.R. 148 (1966) ; *Piñero Agosto* v. *Tribunal Superior*, 94 D.P.R. 204 (1967) ; *Soto* v. *Tribunal Superior*, 90 D.P.R. 517 (1964).

Espero que con la decisión de hoy del Tribunal, esa peligrosa tendencia en Primera Instancia a disolver jurados sin tomar en cuenta debidamente la garantía constitucional contra el riesgo de ser puesto dos veces en peligro de ser condenado, desaparezca. Como se observa en la Opinión, este Tribunal tiene sentadas debidamente las normas a ser seguidas para obtener ese adecuado equilibrio entre lo permisible de las Reglas 38 y 144, y lo prohibido por la Constitución, sin que se pierda la noción de que aquéllas están subordinadas a ésta.

No obstante lo anteriormente expresado, el conceder mi voto en este caso no envuelve criterio de mi parte, el cual me reservo para el momento apropiado, en lo que respecta a si fue error sustancial o no el que se divulgara en el juicio cómo estaban divididos los jurados para condenar y para absolver. No creo necesario resolver y expresarme sobre tal punto para resolver lo pertinente a la exposición por más de una vez.

Al peticionario se le quebrantó su garantía constitucional contra la exposición por más de una vez desde el momento mismo en que sin su consentimiento—consentimiento éste que de haberlo, debe ser inequívoco, inteligentemente dado, y sin lugar a dudas como ocurre siempre que se renuncia a una garantía constitucional—o contra su voluntad, se disolvió el jurado en este caso antes de veredicto, sin que ésta fuera una de las situaciones constitucionalmente permisibles.

El que la divulgación constituyera error sustancial, ello no afectaría la cuestión constitucional envuelta. El que no constituyera error sustancial, como así se resuelve en la opinión, tampoco afectaría la cuestión constitucional.

Con la anterior reserva de criterio de mi parte en cuanto al aspecto de si fue o no error la divulgación de la posición de los jurados en cuanto a inocencia o culpabilidad del peticionario, me adhiero al fallo.