CARLOS AUGUSTO PLARD FAGUNDO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. JOSÉ A. ANDRÉU GARCÍA, JUEZ, demandado.

*Número:* O-71-252 *Resuelto:* 23 de mayo de 1973

*Enrique González,* abogado del peticionario; *Gilberto Gierbolini, Procurador General,* y *Cándita R. Orlandi, Procuradora General Auxiliar,* abogados del demandado.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Dispone la Sec. 11 de la Carta de Derechos de la Constitución de Puerto Rico que "[n]adie será puesto en riesgo de ser castigado dos veces por el mismo delito." Fundándose en esta disposición constitucional, la representación legal del peticionario solicitó del tribunal recurrido que desestimara las tres acusaciones que contra él pendían ante ese tribunal. Fue negada esta solicitud en virtud de lo establecido por la Regla 144(c) de las de Procedimiento Criminal de 1963[1] Accedimos a revisar.

En *Lugo* v. *Tribunal Superior,* 99 D.P.R. 244–247 (1970), reafirmamos la transcendencia de la garantía constitucional enmarcada en la Sec. 11 de nuestra Carta de Derechos. En *Pueblo* v. *Arteaga Torres,* 93 D.P.R. 148–151 (1966), consignamos: "El hecho de que al disolver un jurado *antes del veredicto*—sin que sea a petición o con la aquiescencia del acusado—, el Tribunal actúe bajo los supuestos del apartado (d) . . . de la Regla 144, no establece *per se* la validez de un segundo proceso por el mismo delito. El fundamento de lo

---

[1] Dispone así dicha Regla:
"El tribunal podrá ordenar la disolución del jurado antes del veredicto en los siguientes casos:
(a) . . . . . . . . .
(b) . . . . . . . .
(c) Si la deliberación se prolongare por un lapso de tiempo que el tribunal estimare suficiente para concluir de una manera clara y evidente no haber posibilidad de que el jurado pudiera llegar a un acuerdo.
(d) . . . . . . . .
(e) . . . . . . . .
En todos los casos en que el jurado fuere disuelto, según lo provisto en esta regla, la causa podrá ser juzgada nuevamente."

dicho es que existe la garantía de orden constitucional, que protege al acusado no contra ser castigado dos veces sino contra *ser puesto en riesgo* de ser castigado dos veces por el mismo delito. [citas.]" Y a continuación expresamos:

"Por lo tanto, la cuestión ante nos debe afrontarse no sólo a la luz de la autoridad permisible de la Regla 144 sino satisfaciendo además aquellas normas constitucionales que rigen la materia y que también harían permisible o no un segundo proceso sin que se violara la garantía. Puede decirse en síntesis de esas normas, que cuando ocurran circunstancias en que los fines de una justicia sustancial no puedan lograrse y exista una manifiesta necesidad de así hacerlo, de modo que no se derroten los mejores fines de la justicia, un juicio puede descontinuarse y disolverse el jurado sin el consentimiento del acusado o aun ante su objeción, sin que por ese solo hecho un segundo enjuiciamiento por el mismo delito quede al margen de la garantía constitucional. Es norma complementaria de lo anterior que la descontinuación de un juicio en esas circunstancias debe ser producto de una sana y juiciosa discreción; la facultad debe ejercitarse con la mayor cautela, por consideraciones obvias de peso, y ante una necesidad manifiesta de así hacerlo. *United States* v. *Tateo*, 377 U.S. 463; *Gori* v. *United States*, 367 U.S. 364, 367; *Wade* v. *Hunter*, 336 U.S. 684; *United States* v. *Pérez*, 9 Wheat. 579."

Así vemos que la garantía constitucional que enmarca la Sec. 11 de nuestra Carta de Derechos no lleva consigo, como parte integrante de la misma, la fórmula de absolución cada vez que un proceso no puede culminar en veredicto. Una regla en ese sentido crearía un obstáculo posiblemente insuperable en la administración de la justicia, que no guarda proporción con el tipo de prácticas opresivas que trata de salvaguardar.

La base doctrinal de lo expuesto la encontramos en una serie de dictámenes de la Corte Suprema de los Estados Unidos comenzando con el caso de *United States* v. *Pérez*, 9 Wheat. 579 (1824). En *Pérez*, el Tribunal por voz del Juez Story resolvió que cuando un jurado no puede ponerse de acuerdo para rendir un veredicto, el acusado puede ser

procesado nuevamente. Pero advirtió al así resolver que este poder sólo debe usarse "con la mayor cautela, por consideraciones obvias de peso, y ante una necesidad manifiesta de así hacerlo."

La razón para permitir que un acusado pueda ser sometido a juicio en más de una ocasión cuando el jurado no puede ponerse de acuerdo tiene su fundamento en el interés que tiene el Estado en que todo proceso criminal termine en un fallo justo que vindique tanto los derechos del ciudadano como los de la sociedad. Ver *Ríos Mora* v. *Tribunal Superior*, 95 D.P.R. 117 (1967). No siempre es posible, dado lo complicado que resulta un proceso criminal, que todo juicio termine en un veredicto. Circunstancias ajenas al proceso mismo pueden intervenir para impedirlo. Resultaría injusto que no pudiera procesarse de nuevo al acusado.

En *United States* v. *Jorn*, 400 U.S. 470, 479 (1970), la opinión de una mayoría de los jueces expresó a este efecto:

"Pero es también cierto, que un proceso criminal, aun en circunstancias ideales, es un asunto muy complicado para manejar. Los procedimientos dependen, en primera instancia, de las más elementales consideraciones, por ejemplo, la salud de los varios testigos, de las partes, de los abogados, de los miembros del jurado, etc., todos los que deberán estar listos para comparecer al tribunal en el momento señalado. Y cuando uno añade los problemas de señalamientos debidos al exceso de casos, y la exigencia de la Sexta Enmienda de que el único juicio al que la disposición sobre doble exposición restringe al Gobierno se conduzca rápidamente, se hace a todas luces aparente que una regla mecánica que prohiba un segundo juicio cuando las circunstancias obligan a la disolución del jurado sin el consentimiento del acusado, sería un precio muy alto a pagar por la garantía adicional de seguridad y libertad personal del acosamiento por parte del gobierno que dicha regla mecánica proveería."

Ahora bien, al aplicar esta interpretación, que en sí constituye una modificación de la disposición constitucional que aquí consideramos, tiene por necesidad que establecerse un

balance adecuado entre·los derechos del acusado y los de la sociedad. El interés en velar porque el criminal no quede libre de castigo, fundamental como lo es, no es uno sin limitaciones. El Estado no puede tener el poder absoluto de encausar indefinidamente a una persona hasta conseguir una convicción. No es justo ni razonable tener a una persona sujeta a un proceso que siempre tendría pendiente no importa las veces que fuera sometido a juicio. Precisamente la disposición constitucional tiene el propósito de evitar que el ciudadano sea sometido indefinidamente y mediante una serie de procesos al hostigamiento, la angustia, el sufrimiento y los perjuicios económicos que todo proceso criminal conlleva. El caso de *Pérez* y los que le han seguido no pueden ser autoridad para sostener que el Estado puede abusar el poder que esas opiniones le reconoce. Ver *Brock* v. *North Carolina*, 344 U.S. 424 (1953). Como se dijo en *Green* v. *United States*, 355 U.S. 184, 187 (1957):

"La idea fundamental, una que está profundamente arraigada por lo menos dentro del sistema Anglo-Americano de jurisprudencia, es que no se le debe permitir al Estado, con todos sus recursos y poderes, intentar repetidas veces de condenar a un individuo por un delito, exponiéndolo así a una situación embarazosa, a gastos y a una prueba rigurosa, y obligándolo a vivir en un continuo estado de ansiedad e inseguridad, y aumentando la posibilidad de que pueda ser declarado culpable a pesar de ser inocente."

Con esto presente pasemos a considerar los hechos del presente caso.

Contra el peticionario se radicaron acusaciones el 3 de enero de 1969 por hechos alegadamente ocurridos el 4 de noviembre de 1968. El 18 de noviembre de 1969 se celebró el primer juicio. Se extendió por nueve días. En este primer proceso sólo declararon los testigos de cargo. La defensa se limitó a presentar evidencia documental. El jurado se retiró a deliberar a las 10:15 A.M. A la 1:30 P.M. salieron a almor-

zar regresando a la sala de deliberaciones a las 2:30 de la tarde. A las 3:25 informaron al juez que no habían podido llegar a un acuerdo. El juez procedió a inquirir de cada uno de los jurados si había posibilidad de llegar a un acuerdo. Al recibir respuesta en la negativa disolvió el jurado.

El segundo juicio se celebró el 12 de mayo de 1970. Duró ocho días. En esta ocasión el fiscal no presentó varios de los testigos que había utilizado en el primer proceso. La defensa presentó el testimonio de tres de los testigos renunciados por el fiscal. Luego de impartidas las instrucciones, el jurado se retira a deliberar a las 10:45 A.M. Dos horas después las partes estipulan llamar al jurado para saber si deseaban almorzar antes de continuar las deliberaciones. El jurado se retiró a almorzar y a las 2:35 informaron que no habían podido llegar a un veredicto. El juez lo exhortó a que continuaran pero a las 4:15 informaron que era imposible ponerse de acuerdo. Se disolvió el jurado.

Se señaló nuevamente el caso para el 14 de octubre de 1971. Fue en esa fecha que el juez que presidía el tribunal de instancia se negó a archivar las acusaciones.

Debe notarse que en el primer proceso sólo desfiló la prueba testifical del Estado, limitándose la defensa a presentar evidencia documental. En el segundo proceso, el Estado renuncia varios testigos y la defensa utiliza tres de ellos. A pesar de que en ambos procesos las deliberaciones no se extendieron por largo tiempo, cuatro horas diez minutos en el primer juicio, poco más de cuatro horas en el segundo, el juez, luego de preguntarle a los jurados, quedó convencido que era imposible que llegaran a un veredicto no obstante el hecho de que sólo era necesario el consenso de nueve jurados. Estas circunstancias demuestran que la divergencia de criterios entre los jurados era profunda y que no es razonable esperar que de celebrarse un tercer juicio se pueda llegar a un veredicto. Si es ésta la situación, el resultado sería que el Estado continuaría celebrándole juicios al peticionario con

las molestias y contratiempos que ello conlleva, estando presente el riesgo de que nos habla el Tribunal Supremo de los Estados Unidos en el caso de *Green*, de que en alguna ocasión un jurado pueda rendir un veredicto condenatorio sin que la prueba razonablemente lo justifique. Es deber de los tribunales proteger al acusado contra esta eventualidad.

Desde que el Supremo Federal en el caso de *Pérez*, hace ya casi 150 años, resolvió que la cláusula de doble exposición no es un impedimento para otro proceso, cuando en el primero el jurado no se ha puesto de acuerdo, no ha tenido la ocasión de dictaminar otra vez sobre esta cuestión. (²) No obstante, se denota una tendencia en recientes decisiones de aplicar más estrictamente la garantía constitucional. Nota, *Double Jeopardy—New Approach to the "Manifest Necessity Rule"*, 8 Wake F. L. Rev. 453 (1972). Ver además: Stream, *Double Jeopardy Clause of the Fifth Amendment, A Case for Acquittal by Hung Jury*, N.Y.L.J., Sept. 30, Oct. 1–2 (1970), donde se ataca la doctrina sentada en *Pérez* y se propugna la tesis de que la disolución de un jurado por no poderse poner de acuerdo impide la celebración de un segundo juicio. (³) Se ha apuntado que los recientes dictámenes validando los veredictos por mayoría en los casos de *Johnson* v. *Louisiana*, 406 U.S. 356 (1972) y *Apodaca* v. *Oregon*, 406 U.S. 404 (1972), hacen necesario un reexamen del caso de *Pérez*. Brown, *Refining the Double Jeopardy Clause*, 19 U.C.L.A. L. Rev. 804 (1972).

---

(²) En los casos de *Dreyer* v. *Illinois*, 187 U.S. 71 (1902) y *Keerl* v. *Montana*, 213 U.S. 135 (1909), por tratarse de casos estatales se enfocó la cuestión a base de la cláusula del debido procedimiento de ley de la Enmienda XIV y se limitó a citar el caso de *Pérez* a los efectos de que ya estaba resuelta, sin consideración ulterior del asunto.

(³) Es interesante apuntar como un dato histórico que la Corte Suprema del Estado de Carolina del Norte a fines del Siglo XVIII resolvió que cuando un jurado no rendía veredicto en un caso que conllevaba la pena capital, no podía procesarse de nuevo al acusado. Ver *State* v. *Garriguez*, 2 N.C. 241 (1795).

Algunas cortes federales inferiores han emitido dictámenes en los que se estudia elaboradamente la cuestión que estamos considerando pero al resolver los casos los han limitado a sus propios hechos. En *United States* v. *Castellanos*, 349 F.Supp. 720 (D.C.E.D.N.Y. 1972), se determinó que no procedía un tercer juicio luego que en los dos primeros no hubo veredicto; y en *Preston* v. *Blackledge*, 332 F.Supp. 681 (D.C.E.D.N.C. 1971), se llegó al mismo resultado al no permitir la celebración de un quinto juicio. En contra de lo antes expuesto véanse los casos de *United States* v. *Persico*, 425 F.2d 1375 (1970); *People* v. *Baker*, 335 N.Y.S.2d 487 (1972) y *State of New York* v. *Baker*, 354 F.Supp. 162 (D.C.S.D. N.Y. 1973).

 Aceptado que la disolución de un jurado por no poderse poner de acuerdo, no impide la celebración de otro juicio, y aceptado también que no puede tenerse a una persona indefinidamente bajo el peso y el agobio de una acusación criminal, nos enfrentamos al problema de determinar el número de veces a que puede ser sometido a juicio un acusado. Al considerar la cuestión debemos tener presente que la norma aceptada generalmente al efecto de que es válido un segundo juicio se aparta del claro entredicho constitucional—nadie será puesto en riesgo de ser castigado dos veces por el mismo delito—y que sólo es sostenible como una necesidad, que recordando las palabras del Juez Story en el caso de *Pérez*, debe ejercitarse con la mayor cautela, por consideraciones obvias de peso y ante una necesidad manifiesta de así hacerlo.

 Nos parece que teniendo en cuenta tanto el interés del Estado como el del acusado, lo justo y razonable es que sólo puede celebrarse un segundo juicio cuando el jurado no puede ponerse de acuerdo en el primero. Especialmente en nuestra jurisdicción, donde sólo se requiere la concurrencia de nueve jurados. Establecer cualquier otra norma en cuanto a las veces que puede ser sometido a juicio una persona, resultaría a todas luces arbitrario. Estaría sujeta a la particular

predilección de aquellos que tuvieran la facultad de adjudicar en determinado momento. No existe razón válida, que no sea una mera preferencia personal sin base ni fundamento, para sostener que se pueden celebrar tres, cuatro o cinco juicios adicionales. En vista de lo resuelto en *Pérez*, ciertamente un segundo juicio es razonable para que el Estado tenga la oportunidad de que el caso sea considerado por otro jurado. Más de dos violenta la garantía constitucional. En el caso de *Castellanos*, antes citado, se expresó la corte en los siguientes términos:

"A primera vista podría parecer ilógico el concluir que si la cláusula Constitucional no prohibe un nuevo juicio después de un desacuerdo, sí prohibe otro nuevo juicio después de dos desacuerdos. Lógicamente, podría argumentarse, que si un juicio que termina con un desacuerdo no significa una 'doble exposición' que impide un nuevo juicio, entonces ningún número de desacuerdos pueden tener ese efecto. Pero el permitir un segundo juicio después que el jurado se ha disuelto una vez, por no haberse puesto de acuerdo es en sí la resolución de un viejo desacuerdo, como señalara el tribunal en *United States* v. *Pérez*, y resulta ser un compromiso un tanto incómodo para con la letra de la Constitución. Claramente, dos desacuerdos, simplemente, no son un desacuerdo. La posibilidad de un nuevo juicio después de la disolución del jurado por no llegar a un acuerdo sirve para desalentar el que se ejerza demasiada presión sobre los jurados para que se pongan de acuerdo, y reduce el riesgo de que un veredicto no sea una decisión genuina del jurado alcanzada libremente. Ese propósito justo, sin embargo, se agota cuando un segundo juicio substancialmente sobre la misma evidencia resulta en un segundo desacuerdo. Un tercer juicio se convierte en un juicio por atrición."

En Inglaterra, al igual que en los Estados Unidos, puede encausarse nuevamente cuando el jurado que entendió en el proceso no puede ponerse de acuerdo para rendir un veredicto, pero es norma aceptada que si en la segunda ocasión no se pone de acuerdo el jurado, en el tercer juicio la Corona no presenta prueba y el juez instruye al jurado para que

rinda un veredicto de "no culpable". Devlin, *Criminal Courts and Procedure* (Butterworth & Co., London 1960), pág. 131; Archbold, *Pleading, Evidence & Practice in Criminal Cases*, 35 ed. (1962) Sect. 590, pág. 213.

En vista de lo anterior, *se revocará la resolución del Tribunal Superior, Sala de San Juan—Andréu, J.—y se decretará el archivo de las acusaciones.*

Los Jueces Asociados Señores Cadilla Ginorio, Díaz Cruz e Irizarry Yunqué, aunque no intervinieron en la decisión del presente caso por no haber participado en la vista celebrada, están de acuerdo con la norma establecida en la anterior opinión.