EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR, SALA DE SAN JUAN, HON. RENÉ ARRILLAGA BELÉNDEZ, JUEZ, demandado; SANTIAGO QUIDGLEY RODRÍGUEZ, interventor.

*Número:* O-75-216      *Resuelto:* 5 de febrero de 1976

*Miriam Naveira de Rodón, Procuradora General; Ruth Tentori, Procuradora General Auxiliar,* abogadas del peticionario; *Dora Nevárez Muñoz* y *Benigno Alicea Alicea,* abogados del interventor.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

█  La cláusula sobre doble exposición en la Enmienda Quinta de la Constitución tiene el propósito, en palabras del Juez Douglas, [1] de "equilibrar la posición del gobierno y el individuo, y desalentar el exceso abusivo del temible poder de la sociedad." Se rompe ese equilibrio cuando un juez absuelve apartándose de los méritos de la prueba y descansando su fallo exclusivamente en errónea estimación de un planteamiento técnico declinatorio de su jurisdicción.

█  La minuta revela que después de presentada toda la prueba en el caso de autos la defensa solicitó la absolución del acusado por haberse prestado tardíamente la declaración jurada exigida por 9 L.P.R.A. sec. 1044 del agente que interviene con el detenido por el delito de conducir bajo los efectos de bebidas embriagantes. La resolución de la sala de instancia rehusando considerar la prueba por la tardía prestación de la declaración jurada tiene el efecto y resultado de una orden declinando jurisdicción atribuyendo carácter de condición precedente jurisdiccional a un trámite procesal carente de tal trascendencia. Aún pasando por alto que ésta era una defensa disponible antes del juicio por lo que en ausencia de causa justificada debió tenerse como renunciada bajo la Regla 63 de Procedimiento Criminal, [2] el tribunal erró al estimarla como

---

[1] *Gori* v. *United States,* 367 U.S. 364, 372.

[2] La declaración jurada se prestó el 30 de enero de 1975 y el juicio tuvo lugar un mes después, el 3 de marzo. Si el acusado estimaba que la tardanza era una defensa legítima tuvo plena oportunidad de suscitarla *antes de juicio* pues con una simple moción hubiera obtenido copia de la declaración si es que no se le había entregado ya como ordena la propia Sec. 1044, Tít. 9. No se trata de un hecho al que se confronta el acusado por primera vez en el juicio, sino de un dato conocido o fácilmente conocible

una excepción a su jurisdicción. La ley no señala plazo para prestar dicha declaración y en ineludible reconocimiento de la abrumadora presión de trabajo sobre los funcionarios de justicia y orden público, el legislador se limita a indicar en la citada Sec. 1044 del Título 9, según enmendada por Ley Núm. 58 de 30 de mayo de 1973, que dicho trámite se cumpla "a la mayor brevedad posible."

El fin primordial de la declaración jurada en el procedimiento criminal es asegurar para el juicio el más claro y confiable relato de lo ocurrido, captado y vertido a escrito cuando más frescas se hallan las impresiones recogidas por el testigo; proteger el testimonio de la inevitable erosión del recuerdo que produce el tiempo, que no es necesariamente igual en todos los casos ni en todos los individuos. Luego, la demora en suplir la declaración jurada no paraliza el procedimiento judicial ni afecta la facultad del tribunal para juzgar. Simplemente concede mayor latitud a la defensa para destruir o al menos desacreditar como falto de confiabilidad el testimonio que puede o no haberse tornado incierto o borroso,[3] derivando en cuestión de apreciación por el juez al pasar sobre la credibilidad de la prueba. Lo ocurrido en este caso fue una mera desviación del procedimiento que no enerva el proceso. *Pueblo* v. *Tribunal Superior*, 84 D.P.R. 392 (1962); *Pueblo* v. *Luccioni Medina*, 86 D.P.R. 551 (1962). Definitivamente no quedó afectada la jurisdicción del tribunal.

El fallo absolutorio predicado exclusivamente en la errónea decisión de la cuestión de derecho, no impide su revisión por *certiorari* y la devolución a instancia para continua-

---

si hubiera ejercitado una razonable diligencia, por lo que el caso es típico de defensa renunciada.

[3] Siguiendo estos principios la Asamblea Legislativa al exigir declaración jurada del agente encubierto en casos de mayor gravedad como los de drogas, en plazo de 120 horas, dejó a salvo la admisibilidad de una declaración tardía si ". . . se demuestr[a] *justa causa* para una demora en someterla dentro del término antes indicado." Art. 523 de la Ley Núm. 4 de 23 de junio de 1971 (24 L.P.R.A. sec. 2523). (Énfasis suplido.)

ción del juicio. *Pueblo* v. *Tribunal de Distrito y Colón, Int.*, 74 D.P.R. 838, 859 y ss. (1953). La etapa en que se halle el proceso cuando se produce la orden de sobreseimiento no tiene gran significado. En *Simpson* v. *United States*, 229 F. 940, *cert. den.* 241 U.S. 668, la defensa esperó a que se presentara toda la prueba y se cerraran los informes al jurado para plantear la insuficiencia de la acusación. Su moción prosperó pero no la libró de un segundo juicio con acusación enmendada por considerarse que no hubo *absolución sobre los méritos*. De otro modo se hubiese "derrotado el propósito de la justicia" como dictaminó el Supremo Federal en el caso normativo de *United States* v. *Pérez*, 9 Wheat 579; 6 L.Ed. 165, seguido en *Wade* v. *Hunter*, 336 U.S. 684 (1949); *Brock* v. *North Carolina*, 344 U.S. 424 (1953); y *Gori* v. *United States*, supra.

El acusado no estará expuesto por segunda vez ya que la devolución a primera instancia es la continuación del único y el mismo proceso seguídole, especialmente cuando ninguna prueba adicional a la ya recibida ha de presentarse en su contra. La situación de doble exposición depende en gran medida de cuán arraigada y fundada en los méritos esté la sentencia o resolución apelada via *certiorari* por el gobierno y qué habrá de ocurrir en primera instancia al serle revocada su decisión y devuelto el caso. Si la apelación por el gobierno no obliga al acusado a someterse a un segundo juicio, pudiendo corregirse el error sin necesidad de ulterior proceso, no se vulnera la garantía constitucional contra el riesgo de ser castigado dos veces por el mismo delito. Art. II, Sec. 11, Constitución de Puerto Rico; *United States* v. *Wilson*, 420 U.S. 332 (1975) en que el recurso del Estado iba dirigido a dejar sin efecto una orden anulando un veredicto de culpabilidad por jurado y en su lugar simplemente restablecer la vigencia de dicho veredicto. A un resultado contrario se llegó en *United States* v. *Jenkins*, 420 U.S. 358 (1975) porque, a diferencia del caso que ahora resolvemos, en aquél el juez basó su dictamen desestimatorio en determinaciones de hecho que

consignó por escrito pero imprecisas, lo que llevó a la Corte Suprema Federal a declarar: "Aquí hubo una sentencia absolviendo al acusado, aunque no podemos decir con certeza si fue o no una decisión de las cuestiones factuales adversa al gobierno. Pero basta a los fines de la cláusula de doble exposición . . . que de revocar y devolver se requerirían ulteriores procedimientos de algún tipo encaminados a resolver cuestiones de hecho relativas a los elementos del delito imputado." *Ibid*, pág. 370.

No es tiempo de retornar al rito y a la liturgia procesal que antaño franqueaban una misteriosa puerta trasera a la justicia.

*Se anulará la resolución recurrida y se devolverá el caso a primera instancia para continuación del juicio a tenor de las normas aquí enunciadas.*

El Juez Presidente Señor Trías Monge emitió opinión disidente a la que se unió el Juez Asociado Señor Irizarry Yunqué. El Juez Asociado Señor Dávila emitirá opinión concurrente.

—O—

Opinión concurrente emitida por el Juez Asociado Señor Dávila.

San Juan, Puerto Rico, a 9 de febrero de 1976

Aunque concurro en todos sus extremos con la opinión del Tribunal, inclusive con el criterio de que en el presente caso no hay impedimento legal para que el juicio continúe en el tribunal de instancia, sostengo que es improcedente considerar la cuestión de exposición anterior, ya que es en aquel foro donde procede levantar esa defensa. En la opinión disidente se cita una serie de casos federales donde se discute previamente la cuestión de doble exposición, pero esto es así porque en la jurisdicción federal, las Cortes de Apelaciones y la Corte Suprema están obligadas a considerar esta cuestión antes de

entrar a conocer del recurso, porque su jurisdicción misma depende, de acuerdo con la ley que autoriza las apelaciones por parte del Gobierno, (¹) de que no se vulnere la garantía de no ser expuesto dos veces por el mismo delito. *United States* v. *Jenkins*, 490 F.2d 868, 888 (2d Cir. 1973). Esa no es la situación en nuestra jurisdicción. La jurisdicción de este Tribunal para revisar por *certiorari* resoluciones del Tribunal Superior en casos criminales, no depende de una determinación previa sobre si la cláusula constitucional que prohíbe la doble exposición es aplicable al caso.

—O—

Opinión disidente emitida por el Juez Presidente, Señor Trías Monge, a la que se une el Juez Asociado, Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 5 de febrero de 1976

Un agente del orden público detuvo el 16 de noviembre de 1974 al interventor por conducir alegadamente un vehículo de motor bajo los efectos de bebidas embriagantes. Tras el debido requerimiento, el interventor se negó a someterse al análisis químico de su aliento o su sangre. Conforme a la Ley de Vehículos y Tránsito, Ley Núm. 141 de 20 de julio de 1960, según enmendada, 9 L.P.R.A. sec. 1044, el agente condujo entonces al detenido ante un magistrado, procediendo el mismo día a radicar la correspondiente denuncia. Oportunamente se interpuso acusación contra el interventor por alegada

---

(¹) Dispone así el estatuto federal:

"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution. . . .

"The provisions of this section shall be liberally construed to effectuate its purposes." 18 U.S.C.A. sec. 3731.

violación de la Sec. 5-801 de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 1041.

Se celebró el juicio el 3 de marzo de 1975 ante tribunal de derecho. Presentada la prueba de cargo, el abogado del acusado argumentó que la declaración jurada que debe prestar el agente de orden público en estos casos, 9 L.P.R.A. sec. 1044, se había prestado tardíamente, el 30 de enero de 1975, dos meses y medio después de los hechos. El Tribunal Superior declaró con lugar el planteamiento y, según la minuta, expresó que "absuelve libremente al acusado en base a que pasó un tiempo irrazonable desde la fecha de los hechos y la fecha en que se prestó la declaración jurada. . . ." El Pueblo de Puerto Rico ha recurrido ante nos en solicitud de *certiorari* para revisar esta determinación. Contra esta solicitud el interventor invoca la protección de la cláusula constitucional que expresa que "Nadie será puesto en riesgo de ser castigado dos veces por el mismo delito." Art. II, Sec. 11, Constitución del Estado Libre Asociado de Puerto Rico.

Esta garantía constitucional tiene antiguas raíces en el derecho de Occidente. *Lugo* v. *Tribunal Superior*, 99 D.P.R. 244 (1970); Friedland, *Double Jeopardy*, Oxford University Press, 1969, págs. 5–16; Sigler, *Double Jeopardy; The Development of a Legal and Social Policy*, Cornell University Press, 1969, págs. 122–125. Se reconoció este derecho expresamente en las Siete Partidas de 1263, Partida VII, Título I, Ley 12, aunque no en las constituciones decimonónicas españolas que se aplicaron por trechos en Puerto Rico.

La fuente de nuestro actual derecho en este campo es el Derecho Común. En el informe a la Convención Constituyente de la Comisión sobre la Carta de Derechos se afirmó sobre la totalidad de la Sec. 11 del Art. II:

"Esta sección contiene las garantías que protegen al acusado en el derecho común. Se expresan en la forma tradicional para incorporar así el significado jurídico que han adquirido

en las interpretaciones judiciales." 4 *Diario de Sesiones* 2568-2569. La fórmula escogida era equivalente al Art. 2 de la segunda Ley Orgánica, 39 Stat. 951 (1917), la que a su vez se basaba en la Quinta Enmienda a la Constitución de los Estados Unidos. (¹)

El derecho angloamericano es, por tanto, particularmente relevante para la interpretación de la cláusula que nos ocupa. Si bien no determina la extensión total de este derecho en nuestra sociedad, al menos ayuda a precisar su ámbito mínimo.

Se han descrito así los objetivos de al garantía bajo análisis:

"La idea fundamental, una que está profundamente arraigada por lo menos dentro del sistema Anglo-Americano de jurisprudencia, es que no se le debe permitir al Estado, con todos sus recursos y poderes, intentar repetidas veces de condenar a un individuo por un delito, exponiéndolo así a una situación embarazosa, a gastos y a una prueba rigurosa, y obligándolo a vivir en un continuo estado de ansiedad e inseguridad, y aumentando la posibilidad de que pueda ser declarado culpable a pesar de ser inocente." *Plard Fagundo* v. *Tribunal Superior*, 101 D.P.R. 444, 448 (1973), citando a *Green* v. *United States*, 355 U.S. 184, 187 (1957).

Se han elaborado diversas reglas para el logro de estos objetivos y el establecimiento del debido balance entre los intereses de la comunidad y la ciudadanía. Distintas situaciones exigen la aplicación de normas diferentes. (²) Examine-

---

(¹) La cláusula sobre exposición anterior de la Quinta Enmienda se aplica a los estados miembros de la Unión Americana, *Benton* v. *Maryland*, 395 U.S. 784 (1969). No es necesario expresarse aquí sobre cuestión federal alguna, sin embargo, en vista del resultado a que puede llegarse mediante la interpretación de la cláusula análoga que contiene la Constitución de Puerto Rico.

(²) Las reglas desarrolladas sobre los complicados problemas que suscita la doble exposición están sujetas a gran variedad de excepciones. De ahí que deba tenerse extremo cuidado en particularizar. Las propias generalizaciones que hacemos aquí representan tan solo un esfuerzo de sim-

mos las operantes en las circunstancias específicas del caso de autos, mas limitando el análisis a la definición del alcance mínimo de la garantía en el derecho estadounidense.

El primer paso consiste en determinar cuándo se activa la cláusula. En el caso de juicios por jurado, la cláusula entra en juego cuando se insacula y juramenta el jurado. *Downum* v. *United States*, 372 U.S. 734 (1963). En los juicios por tribunal de derecho, el momento determinante es cuando comienza a desfilar la prueba. *McCarthy* v. *Zerbst*, 85 F.2d 640 (10th Cir. 1936); *Serfass* v. *United States*, 420 U.S. 377 (1975). La activación de la cláusula representa tan solo, no obstante, el inicio de la investigación de si se está colocando al acusado en riesgo de ser castigado dos veces por el mismo delito. *United States* v. *Jorn*, 400 U.S. 470 (1971). Puede haberse comenzado un juicio, por ejemplo, y aún darse circunstancias, no presentes aquí, en que no pueda invocarse la cláusula. *Illinois* v. *Somerville*, 410 U.S. 458 (1973); *United States* v. *Wilson*, 420 U.S. 332 (1975). De no activarse la garantía siquiera, no existe usualmente impedimento para una solicitud de revisión por el Ministerio Público de una resolución adversa.([3]) *Serfass*, supra, pág. 274.

El segundo paso estriba en precisar si efectivamente se está poniendo al acusado en riesgo de ser castigado dos veces por el mismo delito. Hasta hace pocos meses, privaba la teoría de que la cláusula contra la doble exposición evita revisar una "absolución". *United States* v. *Ball*, 163 U.S. 662, 671 (1896); *United States* v. *Sisson*, 399 U.S. 267, 289 (1970). El foco del análisis lo constituía la determinación de si lo que había ocurrido originalmente montaba a una absolución, a

---

plificar una situación concreta. No aludimos a las excepciones reconocidas en otras instancias a las reglas reseñadas, para evitar la prolijidad.

([3]) No es necesario emitir juicio alguno sobre el caso en que la resolución del tribunal de instancia se funde en evidencia que constituya una defensa en los méritos.

una desestimación o a una declaración de nulidad del juicio. Comment, *Government Appeals of "Dismissals" in Criminal Cases*, 87 Harv. L. Rev. 1822 (1974). En *United States* v. *Wilson*, 420 U.S. 332 (1975) y en *United States* v. *Jenkins*, 420 U.S. 358 (1975) se varía fundamentalmente el enfoque y se instituye como criterio determinante la cuestión de si se requieren o no procedimientos adicionales de alguna índole, de revocarse la sentencia o devolverse el caso, para resolver cuestiones de hecho esenciales para el establecimiento de elementos del delito imputado. *The Supreme Court—1974 Term*, 89 Harv. L. Rev. 1, 53–54 (1975).

*Jenkins* es de especial interés por su similaridad al caso de autos. En *Jenkins* se le envió al querellado una notificación de reclutamiento. El querellado obtuvo el modelo necesario para que se le clasificase como objetor por razones de conciencia, pero no se pospuso su reclutamiento para fines de radicar el modelo. El querellado no se presentó entonces al centro de reclutamiento y se procedió entonces a radicar la acusación correspondiente. El caso se vio por tribunal de derecho y al terminar el desfile de la prueba el tribunal decretó la desestimación de la acusación y ordenó la libertad del acusado. El tribunal de instancia señaló que, bajo *Ehlert* v. *United States*, 402 U.S. 99 (1971), la Junta de Servicio Selectivo tenía razón en rehusar posponer el reclutamiento en tales circunstancias, pero que *Ehlert* se había decidido después de los hechos del caso. El Ministerio Público apeló en base a que el tribunal había cometido error de derecho al no aplicar a *Ehlert* retroactivamente. El Tribunal Supremo de los Estados Unidos, por voz del Juez Rehnquist, rechazó la apelación por estimar que se estaba colocando al querellado en riesgo de ser castigado dos veces por el mismo delito. El Tribunal rehusó expresamente aceptar la teoría del gobierno de que, en casos vistos por tribunal de derecho, el gobierno debe poder apelar si al desfilar la prueba del Estado el juez decide el caso sobre una base

errónea de derecho. (⁴) Rechazó también la teoría que, de declararse con lugar la apelación, la reapertura del caso para admitir prueba adicional simplemente representaría la continuación del juicio, sin que pudiese invocarse la cláusula referente a la exposición anterior. Tampoco consideró importante analizar si se trataba de una desestimación o una absolución. Estimó suficiente señalar que no se trataba claramente de un caso de anulación del juicio (*mistrial*) ; que se había liberado al acusado, aunque no se sabía a ciencia cierta si la decisión del tribunal de instancia resolvió las cuestiones de hecho en contra del gobierno; y que bastaba de todos modos para los fines de la cláusula sobre la doble exposición que fuesen necesarios procedimientos ulteriores de alguna índole encaminados a resolver cuestiones de hechos relativos a los elementos constitutivos del delito. Aun si el tribunal de instancia, apuntó Rehnquist, no tuviese que recibir evidencia adicional, todavía sería necesario que hiciese determinaciones suplementarias de hechos. Se había expuesto por tanto al acusado al riesgo que se le castigase. En el caso de autos es claro que tendría que recibirse evidencia adicional y efectuar determinaciones sobre cuestiones esenciales de hechos, por lo que ha ocurrido una exposición anterior.

*Jenkins* no coloca al Ministerio Público en posición de indefensión. (⁵) La aplicación de una regla comparable a la de *Jenkins* puede evitarse, además, parcial y aun totalmente, mediante el uso de diversos mecanismos disponibles a los fiscales. Puede redactarse la acusación en tal forma que el acusado se encuentre en la obligación de formular sus obje-

---

(⁴) La doctrina que prohíbe la apelación por el Estado por razón de haberse cometido error de derecho es antigua. *Kepner* v. *United States,* 195 U.S. 100, 129–130 (1904). Véase también: *Pueblo* v. *Cabrera,* 47 D.P.R. 185 (1934).

(⁵) Es interesante observar que hace cuarenta años este Tribunal anticipó los resultados de *Jenkins* y *Wilson* en *El Pueblo* v. *Rivera,* 46 D.P.R. 113 (1934) y *Pueblo* v. *Noonan,* 46 D.P.R. 724 (1934). Véase también: *Pueblo* v. *Cabrera,* 47 D.P.R. 185 (1934).

ciones de derecho antes del juicio, so pena de su renuncia bajo la Regla 63 de nuestras Reglas de Procedimiento Criminal. En tal caso no entra en juego generalmente la cláusula sobre la doble exposición. Puede también solicitarse la dilucidación en la conferencia anterior al juicio de cuestiones que luego podrían crear dificultades. A lo que debe conducir *Jenkins* es precisamente al uso diligente e intenso por los fiscales de la nueva Regla 95.1, Ley Núm. 88 de 26 de junio de 1974.

Por los fundamentos expuestos, confirmaría la decisión del tribunal de instancia.