EL PUEBLO DE PUERTO RICO, peticionario, *v.* RAMÓN A. MARTÍNEZ TORRES, acusado y recurrido.

*Número:* CE-88-682          *Resuelto:* 29 de octubre de 1990

*José Enrique Ayoroa Santaliz,* abogado del recurrido; el peticionario no compareció.

## RESOLUCIÓN

A la moción de reconsideración presentada por el peticionario Ramón A. Martínez Torres, no ha lugar.

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió, en etapa de reconsideración, opinión concurrente, a la cual se une el Juez Asociado Señor Andréu García. El Juez Asociado Señor Rebollo López emitió, en etapa de reconsideración, opinión disidente. El Juez Asociado Señor Hernández Denton no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

—o—

Opinión concurrente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Andréu García.

(En reconsideración)

En el caso de autos, el pasado 27 de junio de 1990, revocamos la resolución del Tribunal Superior, Sala de Ponce, que absolvió al acusado al aplicar la cláusula contra la doble exposición (*double jeopardy*). Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1. En esa ocasión concurrimos con el resultado sin expresión adicional escrita.

Los planteamientos de la moción de reconsideración presentada por Martínez Torres y el análisis del disenso del Juez Asociado Señor Rebollo López nos obligan a reiterar que nuestra razón de decidir siempre ha sido la expuesta en nuestra opinión disidente emitida en *Pueblo v. Martínez Torres*, 120 D.P.R. 496 (1988). Allí, en lo pertinente, sostuvimos:

*Independientemente de que el sargento Meléndez Zambrana no fuera presentado como testigo,* es incontrovertible que los agentes Pérez Tirado, Campos y Figueroa recibieron información exacta que describía determinado automóvil donde supuestamente se transportaba heroína ilegalmente y se dirigía hacia el área donde ellos prestaban vigilancia. Esa información los alertó. Generó una *sospecha razonable* que naturalmente ameritaba investigarse. Poco tiempo después vieron acercarse al vehículo. En ese instante inicial, quedó corroborada parte de la información radiocomunicada. Entonces los agentes se le aparearon al vehículo y, previa identificación, pidieron al conductor que se detuviera. *Éste hizo caso omiso, aceleró la marcha y huyó.* En ese momento, para efectos de motivos fundados, quedó robustecida la información original. Los agentes lo persiguieron. Tras un recorrido que incluyó un callejón entre desoladas siembras de caña, el conductor se vio frustrado de continuar su huida por encontrarse súbitamente con el obstáculo de una bomba de agua entre los sembrados. *Optó por abandonar el vehículo y salir corriendo hasta que los agentes lo alcanzaron.* En

ese momento es registrado y se hallan en su persona cien (100) *decks* de heroína. Ante estos hechos, ¿puede realmente sostenerse que el acusado Martínez Torres no "se dio a la fuga"? No se cuestiona persuasivamente la licitud del registro en esta etapa. Antes estos hechos, ¿puede afirmarse que los mencionados agentes carecían de suficientes motivos fundados para proceder al arresto? ¿Es que la información radial que desencadenó la investigación legítima no podían presumirla correcta? ¿Significa que la orden del sargento Meléndez Zambrana no era confiable? Todas estas interrogantes requieren respuestas afirmativas como única solución lógica de que "un agente pued[e] actuar a base de una comunicación de otro policía sin tener motivos fundados".

En resumen, *la información* recibida radialmente fue corroborada en cuanto a exactitud del vehículo y del lugar. Además, la actuación del apelante Martínez Torres de no detenerse, sino huir para luego abandonar el auto, a juicio nuestro *generó de manera independiente bastantes motivos fundados o razones para arrestarlo*. Lo que al inicio sólo fue una investigación limitada, fue ampliada y completada por su conducta, más que sospechosa. En estas circunstancias, ¿podemos entonces tachar de irrazonable bajo la Constitución la intervención policiaca? Véase *Pueblo* v. *Rodríguez*, 91 D.P.R. 157, 161 (1964). Como expusimos en nuestro disenso en *Pueblo* v. *Malavé González*, 120 D.P.R. 470, 490–491 (1988):

"El concepto de motivos fundados —como sinónimo de causa probable, *Pueblo* v. *Díaz Díaz*, 106 D.P.R. 348, 353 (1977)— no es un férreo producto de un examen o experimento a posteriori en el laboratorio aséptico judicial. Tampoco corresponde al mundo de lo académico. No es teórico ni abstracto, sino esencialmente pragmático. Lo que se le exige al policía son motivos fundados, a saber, razones suficientes o eficaces. Ello excluye certeza matemática y menos evidencia de culpabilidad. A tal efecto la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, exige 'tener motivos fundados para *creer*'. *Creer* significa 'tener por cierta una cosa que el entendimiento no alcanza o que no está comprobada o demostrada'. *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984 T. I, pág. 395.

En nuestra jurisprudencia ha cristalizado el enfoque que 'un funcionario de[l] orden público puede efectuar un arresto sin la orden correspondiente, entre otros casos, cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave, *independientemente de que dicho delito*

*se hubiese cometido o no en realidad.* Regla 11 de Procedimiento Criminal de Puerto Rico, 2 *Práctica Forense,* pág. 20 (1964). La jurisprudencia enmarca el concepto de "motivo fundado" en la posesión de aquella información y conocimiento que lleven a una persona ordinaria y prudente a creer que el arrestado ha cometido delito. *Pueblo v. Cabrera Cepeda,* 92 D.P.R. 70, 74 (1965); *Cepero Rivera v. Tribunal Superior,* 93 D.P.R. 245, 248 (1966). La conducta del funcionario público se juzga pues en orden al criterio de la persona prudente y razonable, por lo que es necesario considerar las circunstancias específicas del arresto para determinar su validez'. *Pueblo v. Alcalá Fernández,* 109 D.P.R. 326, 331–332 (1980); *Pueblo v. Lafontaine Álvarez,* 98 D.P.R. 75, 81 (1969)." (Énfasis suplido y en el original.) *Pueblo v. Martínez Torres,* 120 D.P.R. 496, 513–515 (1988), opinión disidente.

Esta posición no ha cambiado y explica ahora por qué "concurrimos en el resultado arribado". Por ende, nos reservamos para mejor ocasión el exponer nuestros criterios sobre la normativa que gobierna los trámites ulteriores apelativos revocatorios y sus distintas modalidades y limitaciones, por razón de la cláusula constitucional que prohíbe la doble exposición.

—O—

Opinión disidente emitida, en etapa de reconsideración, por el Juez Asociado Señor Rebollo López.

La interpretación y aplicación de la cláusula constitucional sobre doble exposición plantea problemas complejos *que deben ser examinados con gran detenimiento y particular cuidado.* Mediante *la sabia y correcta aplicación de la misma* se intenta establecer un fino balance entre los intereses de la sociedad en general y los ciudadanos que componen la misma.

El presente recurso no sólo plantea un aspecto específico e importante relativo a la interpretación de la referida cláusula, *sino que ejemplifica de modo patente la pulcritud y cuidado con que debemos encarar nuestra tarea de interpretarla apropiada y responsablemente.*

## I

Conforme surge de la relación de hechos que hiciera este Tribunal en la decisión mayoritaria que emitiera en el caso de epígrafe *el día 17 de febrero de 1988, Pueblo v. Martínez Torres,* 120 D.P.R. 496, 498–499 (1988) —en adelante, *Pueblo v. Martínez Torres I*— la prueba de cargo:

> . . . estableció que el 6 de junio de 1979, mientras los agentes de la Policía Julio Pérez Tirado, José A. Campos y Otoniel Figueroa realizaban una ronda preventiva contra el tráfico de drogas en el barrio "La Cuarta" de Ponce, *recibieron a través del sistema de radioteléfono de su vehículo un mensaje oficial de parte de su jefe inmediato, el sargento José A. Meléndez Zambrana. Éste informó que en el automóvil marca Volkswagen, color rojo, tablilla 91S669, se había realizado una transacción de drogas en "La Cantera" de Ponce,* y que el vehículo había pasado la entrada del barrio "La Cuarta" hacia la Carr. Núm. 1 y se dirigía a Santa Isabel. Unos diez (10) minutos más tarde vieron pasar al vehículo descrito por radioteléfono. *El conductor del vehículo no estaba infringiendo la Ley de Vehículos y Tránsito de Puerto Rico* ni hacía algo que llamara particularmente la atención de los agentes de la Policía. *Los agentes,* quienes conducían un vehículo sin identificar y sin sirena, *tocaron bocina para detenerlo.* De carro a carro, cuando estaban con los vehículos aún en marcha, con enseñaron la identificación de uno de los agentes *y ordenaron al conductor que se detuviera.* El acusado, en vez de obedecer, aceleró. Al ser perseguido por la Policía el vehículo se desvió por un callejón y entró en una plantación de caña donde encontró el paso cerrado por una bomba de riego. *El conductor se bajó del automóvil e intentó huir. Tras un breve forcejeo fue capturado y puesto bajo arresto. Al registrarlo encontraron cien (100) "decks" de heroína en sus bolsillos.* (Énfasis suplido.)

Como resultado de los hechos relatados, el Estado le imputó a Ramón A. Martínez Torres una supuesta infracción al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec.

2404.(1) Procede que se enfatice el hecho de que el Ministerio Fiscal *no* presentó como testigo de cargo al sargento Meléndez Zambrana *en ninguna* de las etapas iniciales de dicho procedimiento judicial, *hecho que dio base a, o motivó, que la representación legal de Martínez Torres planteara y solicitara, oportuna y específicamente, a nivel del Tribunal Superior de Puerto Rico, Sala de Ponce, la supresión de los "decks" de heroína.*(2) Declarada sin lugar dicha moción luego de celebrada la correspondiente vista, y llevado a cabo el juicio, en el cual se admitió en evidencia la prueba objetada a pesar de que el Estado tampoco presentó como testigo al sargento Meléndez Zambrana, un jurado decretó la culpabilidad de Martínez Torres por los delitos imputados. Inconforme, Martínez Torres apeló ante este Tribunal. En el recurso de apelación que a esos efectos radicara, le imputó al foro de instancia haber errado al admitir en evidencia los referidos *decks* de heroína por ser los mismos el producto de un arresto y registro ilegal.

---

(1)  Martínez Torres fue, en adición, acusado por una supuesta infracción a la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1152(a), esto es, "desobedecer la señal de detenerse".

(2)  En el Memorando de Derecho en apoyo de la moción de supresión de evidencia, la vista de la cual se celebró con antelación al juicio, la defensa expresó que:

". . . este caso ya está señalado para la vista en su fondo. Consiguientemente, ya pasó por la Vista Preliminar. Puede apreciarse, sin embargo, de un simple examen a la acusación, *que el Sgto. José A. Meléndez Zambrana ni declaró en la Vista Preliminar, ni está anunciado como testigo de cargo para el juicio en su fondo. Tampoco, claro, declaró en la discusión de esta Moción de Supresión de Evidencia.*

"Tenga muy presente el Honorable Magistrado que los policías que arrestan a Ramón Antonio Martínez Torres no notan nada particular, es decir, nada delictivo, ni en él, ni en su vehículo, ni en la forma en que conduce ese vehículo.

"Los policías detienen a Ramón Antonio Martínez Torres, y lo arrestan, S[Ó]LO porque reciben —mediante un intermediario telefónico— una instrucción del Sgto. José A. Meléndez Zambrana, para que detenga al conductor del vehículo descrito.

*"Los policías no tienen justa causa DE PROPIO CONOCIMIENTO para detener y arrestar a Ramón Antonio Martínez Torres. Si lo arrestan es porque han recibido, alegadamente, esa orden VERBAL Y MEDIANTE INTERMEDIARIO de parte de un supervisor.*

"Es propio que el juzgador se formule la siguiente pregunta: *¿Tenía justa causa el Sgto. José A. Meléndez Zambrana para ordenar el arresto de Ramón Antonio Martínez Torres? No lo sabemos.*

"Siendo así que no se puede arrestar a un ciudadano sin que medie justa causa para ello, la orden de arresto verbal —sin causa justificada— dictada por el Sgto. José A. Meléndez Zambrana es ilegal. Consiguientemente, el subsiguiente registro también lo es." (Énfasis suplido y en el original.)

Este Tribunal, mediante la mencionada opinión mayoritaria de fecha 17 de febrero de 1988, revocó la sentencia apelada. Apoyándose, principalmente, en el normativo caso de *Pueblo v. Luzón*, 113 D.P.R. 315 (1982), razonó el Tribunal que, no obstante ser permisible que unos agentes del orden público actúen "según la información provista por otro miembro de la fuerza", resulta "necesario *que se presente evidencia para establecer los motivos fundados que tuvo el agente que dio la orden* o que originó la cadena de información que tuvo como resultado que se ordenase el arresto", ya que el "hecho [de] que un agente pueda actuar según una comunicación de otro policía sin tener motivos fundados no significa que el Ministerio Público *queda relevado de su deber de presentar evidencia para establecer la legalidad del arresto*". (Énfasis suplido.) *Pueblo v. Martínez Torres I*, ante, págs. 505–506.

Devuelto el caso al tribunal de instancia, dicho foro dispuso la celebración de una vista para escuchar el testimonio del sargento Meléndez Zambrana con el propósito de determinar si éste, al ordenar a través del sistema oficial de comunicación de la Policía la detención del automóvil que conducía el acusado, tenía motivos fundados para hacerlo. Mediante moción a esos efectos, Martínez Torres se opuso a la celebración de la vista, invocando la protección de la Sec. 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1. En esta ocasión el magistrado de instancia acogió el planteamiento de la defensa, decretó la aplicación de la protección constitucional contra la doble exposición y estimó como único remedio la absolución del imputado.

Inconforme, el Estado acudió vía *certiorari* ante este Tribunal. Mediante opinión de fecha 27 de junio de 1990, *Pueblo v. Martínez Torres*, 126 D.P.R. 561 (1990) —en adelante *Pueblo v. Martínez Torres II*— una mayoría de los integrantes de este Tribunal revocó la resolución recurrida.

Luego de resumir, en forma adecuada, el derecho aplicable en esta clase de situaciones, la mayoría concluyó que a Martínez Torres no le cobijaba la protección constitucional contra la doble

exposición por cuanto la revocación decretada en *Pueblo v. Martínez Torres I*, ante, se había debido a la comisión por el foro de instancia de un "error de derecho", situación no cobijada por la mencionada protección constitucional. Dicha conclusión principalmente se basó en la escueta y superficial aseveración de que la determinación referente a la admisión o no de evidencia durante un proceso criminal es "una determinación *estrictamente* de derecho" (énfasis suplido) *Pueblo v. Martínez Torres II*, ante, pág. 575; situación que, erróneamente se concluye, era la imperante en dicho caso.

Todavía más "sorprendente", sin embargo, resulta ser la actuación de la mayoría de los integrantes del Tribunal *al disponer del caso*. Ello merece no sólo un comentario separado sino que transcribamos, literalmente, lo expuesto por el Tribunal. Conforme surge de la parte final de la opinión emitida en *Pueblo v. Martínez Torres II*, ante, págs. 576–578, la mayoría "razonó" de la manera siguiente:

> En *Pueblo v. Martínez Torres*, supra, revocamos la sentencia recurrida e invalidamos la convicción que recayó contra el acusado. *La efectividad de nuestra opinión revocatoria no puede estar sujeta al resultado adverso para el acusado de una vista de supresión de evidencia*. Dicha sentencia, una vez revocada, perdió toda vigencia y aplicabilidad y no puede ser reinstalada. *En la eventualidad de que se concluya, tras la celebración de una vista de supresión de evidencia, que existieron motivos fundados para el arresto y registro del acusado, procede en ese momento la celebración de un nuevo juicio*. Resolver lo contrario sería atentar contra el derecho del acusado a obtener un juicio justo así como contra el interés de la sociedad en castigar a aquel a quien se le ha probado claramente su culpabilidad luego de pasar por el tamiz de tal proceso judicial.
>
> Por otro lado, si en la vista se determina la inexistencia de motivos fundados, el Estado admite —y así lo expone en su comparecencia— que estaríamos frente a un problema de insuficiencia de la prueba.
>
> Ahora bien, es norma establecida que, de ordinario, "una decisión suprimiendo una evidencia en particular necesariamente no implica el fin del caso; siempre existe la posibilidad de que el Ministerio

Público pueda demostrar el día del juicio la culpabilidad del acusado más allá de duda razonable mediante la presentación de evidencia independiente y distinta a la suprimida". *Pueblo v. Rivera Rivera,* supra, pág. 290. Por entender que debemos garantizarle tal oportunidad al Estado, hemos resuelto "que un tribunal no tiene autoridad en ley para emitir un 'fallo absolutorio' en una vista señalada para la discusión de una moción de supresión de evidencia ya que dicho fallo sólo puede ser emitido en el contexto de un 'juicio'. Cualquier pronunciamiento a esos efectos dentro de una vista de supresión es un acto *ultra vires* y nulo que es revisable, por constituir una cuestión de derecho, ante el foro apelativo, procediendo la devolución del caso al foro de instancia para la celebración propiamente del 'acto del juicio' sin que se violente la garantía constitucional sobre doble exposición". Íd. La norma antes expuesta tiene vigencia en circunstancias normales, como las dadas en *Pueblo v. Rivera Rivera,* supra, en que nunca se celebró un juicio en los méritos y la "absolución" de algunos coacusados se dio en la vista de supresión de evidencia.

Sin embargo, en el caso de autos, debido a su evolución procesal particular, no es aplicable la norma antes enunciada. *En este caso el Ministerio Público tuvo oportunidad de presentar su prueba contra el acusado recurrido.* Debido a la admisión errónea de parte de dicha evidencia, revocamos la convicción que recayó contra el acusado. De determinarse —*en la vista de supresión de evidencia que se ha de celebrar*— la inexistencia de motivos fundados que hicieran permisible la intervención de los agentes con el acusado, no procedería la celebración de un nuevo juicio, pues estaríamos ante un problema de insuficiencia de evidencia. El Procurador General así lo entiende y lo acepta. *En este caso es impermisible la presentación de nueva evidencia por parte de la Fiscalía; no se le puede ofrecer una segunda oportunidad para que presente prueba que pudo traer en el primer proceso, pero que no lo hizo.* Procede, por lo tanto, que se absuelva al acusado si, *tras la celebración de la vista de supresión de la heroína incautada,* se determina que no hubo motivos fundados para intervenir con éste. (Énfasis suplido y escolios omitidos.)

*Leído lo transcrito, se entiende perfectamente la "ambivalencia" a nivel de instancia.* Como podemos notar, a pesar de que se expresa que la "efectividad de nuestra opinión revocatoria no puede estar sujeta al resultado adverso para el

acusado de una vista de supresión de evidencia", *Pueblo v. Martínez Torres II*, ante, pág. 577, el Tribunal precisamente dispone que el foro de instancia deberá de celebrar una *nueva* vista de supresión en la cual deberá determinar si el sargento Meléndez Zambrana efectivamente tenía "motivos fundados" para ordenar el arresto y detención de Martínez Torres, disponiendo que si así lo determinase, éste podrá ser sometido a un nuevo proceso. *Por otro lado,* no obstante reconocerse que "el Ministerio Público tuvo oportunidad de presentar su prueba contra el acusado recurrido"; que "es impermisible la presentación de nueva evidencia por parte de la fiscalía", y que "no se le puede ofrecer [al Ministerio Público] una segunda oportunidad para que presente prueba que pudo traer en el primer proceso pero que no lo hizo", se ordena, repetimos, que el foro de instancia celebre una *nueva* vista "de supresión" donde deberá permitirle al Estado presentar la prueba sobre los posibles "motivos fundados" que tuvo el sargento Meléndez Zambrana; *prueba que pudo presentar el Fiscal no sólo en la vista sobre supresión solicitada por la defensa sino que en el proceso ya celebrado, y que éste no presentó a pesar del señalamiento específico a esos efectos por parte de la defensa antes de la celebración del proceso* —véase esc. 2— *y de nuestra decisión en* Pueblo v. Luzón, ante.

Dicho con el mayor respeto, difícilmente se pueda encontrar en nuestra jurisprudencia *una decisión más confusa, contradictoria y errónea* que la emitida por este Tribunal en *Pueblo v. Martínez Torres II,* ante. Es por ello que, en dicha ocasión, disentimos mediante una simple "expresión".(3) En el día de hoy, no obstante nuestros esfuerzos en contrario, una mayoría de los

---

(3) En dicha ocasión hicimos constar, en la sentencia que se emitiera, que el Juez suscribiente, no obstante entender que la opinión emitida por el Tribunal exponía en forma adecuada ciertas doctrinas legales, *disentía* por cuanto éramos del criterio de que el Tribunal, *al aplicar erróneamente dichas doctrinas a los hechos particulares del caso, llega a un resultado completamente equivocado.*

El Juez Asociado Señor Negrón García —quien en *Pueblo v. Martínez Torres I,* 120 D.P.R. 496 (1988), había disentido por entender que los tres (3) agentes que detuvieron y arrestaron a Martínez Torres tenían "motivos fundados" para así ellos actuar— meramente "concurrió en el resultado" en *Pueblo v. Martínez Torres II,* 126 D.P.R. 561 (1990).

integrantes del Tribunal se reafirma, e insiste, en el error cometido al denegar la moción de reconsideración radicada por el peticionario Martínez Torres. En esta ocasión, creemos se hace necesario exponer en detalle los fundamentos de nuestra posición disidente.

## II

La citada Sec. 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, ed. 1982, pág. 308, establece que "[n]adie será puesto en riesgo de ser castigado dos veces por el mismo delito". Según el informe rendido a la Convención Constituyente por la Comisión sobre la Carta de Derechos, el derecho común es la fuente de nuestro ordenamiento constitucional con relación a la cláusula de doble exposición. A esos efectos se afirmó sobre la Sec. 11 del Art. II:

> Esta sección contiene las garantías que protegen al acusado en el derecho común. Se expresan en la forma tradicional para incorporar así el significado jurídico que han adquirido en las interpretaciones judiciales. 4 Diario de Sesiones de la Convención Constituyente 2568–2569 (1952).

Es clara, en consecuencia, la pertinencia de la jurisprudencia federal, *aunque ésta tan sólo nos señale el ámbito mínimo de su operación y no establezca la dimensión o el alcance de su extensión en nuestra jurisdicción*.[4] En términos generales, la cláusula contra la doble exposición intenta evitar que el Estado, con todos sus recursos y poderes, trate repetidas veces de procesar a un individuo por un delito. Véase *Plard Fagundo v. Tribunal Superior*, 101 D.P.R. 444, 448 (1973), citando expresiones del Tribunal Supremo federal en *Green v. United States*, 355 U.S. 184, 187 (1957).

---

[4] En 1917 el Congreso de los Estados Unidos extendió a Puerto Rico la garantía contra la Doble Exposición a través del Art. 2 de la Segunda Ley Orgánica, Acta Jones, 39 Stat. 951 (1917), basado éste, a su vez, en la Quinta Enmienda federal. Véanse: *Ortiz Báez v. Tribunal Superior*, 98 D.P.R. 261, 279 (1970), y *Pueblo v. Tribunal Superior*, 104 D.P.R. 626, 634–635 (1976).

Es norma firmemente establecida que la cláusula de doble exposición no impide, de ordinario, la celebración de un nuevo proceso contra el acusado cuando su convicción ha sido revocada en apelación por el fundamento de que el tribunal de instancia cometió *un error de derecho* en el proceso original. *United States v. Tateo*, 377 U.S. 463 (1964); *United States v. Ball*, 163 U.S. 662 (1896). Definitivamente, como señala el Juez Harlan, la sociedad pagaría un precio muy alto si permitiésemos que un acusado escape impunemente de un castigo claramente merecido por el mero hecho de que se ha cometido un error de derecho a nivel de instancia que hace mandatoria la revocación de los procedimientos que finalizaron en su convicción. *United States v. Tateo*, ante, pág. 466.

Ello no obstante, en *Burks v. United States*, 437 U.S. 1 (1978), se aclaró que la cláusula de doble exposición sí constituye impedimento contra un nuevo proceso en aquellos casos donde se determina que la prueba que el Estado presentó en instancia contra el acusado es una *"insuficiente"*. Véanse, también: *Hudson v. Louisiana*, 450 U.S. 40 (1981); *Greene v. Massey*, 437 U.S. 19 (1978). No podría ser de otra manera. Ordenar un nuevo juicio en tales circunstancias sería ir en contra de la noción legendaria, que sustenta tanto a *Burks v. United States*, ante, como a la propia cláusula, *de que el Estado sólo debe tener una oportunidad justa para presentar y ofrecer toda la prueba que tenga a su alcance* (*one fair opportunity to offer whatever proof it [can] assemble*). *Burks v. United States*, ante, pág. 16.

## III

En *Pueblo v. Martínez Torres II*, ante, se expone, en forma aceptable y adecuada, la norma jurisprudencial vigente en la jurisdicción federal respecto a la aplicación de la cláusula sobre doble exposición; la mayoría, sin embargo, *incurre en error al aplicar dicha norma a la situación particular de hechos que presenta el caso y al ignorar disposiciones particulares de nuestra Constitución y la jurisprudencia interpretativa de las mismas.*

Partiendo de la irreflexiva aseveración a los efectos de que la determinación sobre admisión o no de evidencia es una *"estricta- mente* de derecho", la mayoría concluye en forma apresurada que, como en el presente caso se trataba precisamente de la admisión o no de los cien (100) *decks* de heroína, no aplica la cláusula sobre doble exposición por cuanto lo que hizo el Tribunal en *Pueblo v. Martínez Torres I*, ante, fue meramente corregir la comisión de un error de derecho por parte del tribunal de primera instancia al admitir dicha evidencia. Dicho razonamiento no pasa de ser una mera simpleza.

Al así "razonar", la mayoría no sólo no enfoca correctamente la verdadera naturaleza del problema planteado en el recurso sino que se desasocia totalmente del trasfondo fáctico-procesal del caso a nivel de instancia. Si bien es correcto que un tribunal, al amparo de lo dispuesto por la Regla 9(A) de las Reglas de Evidencia, 32 L.P.R.A. Ap. IX, tiene la facultad de determinar, de forma preliminar, la admisibilidad de toda la evidencia que presenten las partes durante un proceso, razón por la cual la determinación que a esos efectos realiza dicho tribunal es una "de derecho", *no es menos cierto que dicha determinación es una que envuelve cuestiones de hecho y de derecho.* E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia,* San Juan, Pub. J.T.S., 1985, pág. 18. Esto es, dicha determinación no es una *estrictamente* de derecho.

Por otro lado —y a diferencia de la situación en que está en controversia, digamos a manera de ejemplo, la admisión o no en evidencia de una escritura pública— *en la situación específica ante nuestra consideración no podemos ignorar las disposicio- nes de la Sec. 10 del Art. II de nuestra Constitución,* L.P.R.A., Tomo 1, ed. 1982, pág. 299, la cual establece que:

*No se violará el derecho del pueblo a la protección de sus personas,* casas, papeles y efectos *contra registros,* incautaciones y allanamientos *irrazonables.*

No se interceptará la comunicación telefónica.

*Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente*

*cuando exista causa probable apoyada en juramento o afirmación,* describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

*Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.* (Énfasis suplido.)

Al interpretar la referida disposición constitucional hemos establecido claramente que "una incautación sin orden judicial produce una *presunción de invalidez* sujeta a ciertas y limitadas excepciones". (Énfasis suplido.) *Pueblo v. Lebrón,* 108 D.P.R. 324, 329 (1979). Como resultado, le corresponde al Ministerio Público el *peso de probar* la existencia de una de dichas excepciones (*Pueblo v. Vázquez Méndez,* 117 D.P.R. 170 (1986); *Pueblo v. Rivera Rivera,* 117 D.P.R. 283 (1986)), *entre las cuales figura el registro incidental a un arresto legal, basado en los "motivos fundados" por parte del agente del orden público para intervenir con un ciudadano.*

Presumiéndose, por "mandato constitucional", la ilegalidad de la actuación y del fruto de la misma, *el Estado tiene la obligación de probar, como parte integrante o inherente del delito por el cual procesa al imputado* —sea éste por infracción a la Ley de Armas de Puerto Rico, Ley de Sustancias Controladas de Puerto Rico, etc.— *los "motivos fundados" que tuvo para la intervención* . En otras palabras, cuando el Estado interviene *sin* orden judicial con un ciudadano, y el Estado no presenta prueba alguna sobre los "motivos fundados" que dieron lugar a la intervención, *la determinación respecto a la admisibilidad de la evidencia ocupada como producto de esa intervención envuelve un "problema de suficiencia de prueba".* La diferencia entre esta situación y, a manera de ejemplo, aquella en que el Estado no presenta prueba sobre las "advertencias" que requiere la jurisprudencia para que una confesión sea admisible en evidencia, consiste en que, en el caso de la confesión, la prueba sobre las advertencias *no* forma parte propiamente de la prueba sobre los hechos delictivos imputados, mientras que en el caso que ocupa nuestra atención, *la prueba sobre los hechos que dieron lugar a la configuración de los "motivos fundados" es parte integrante o inherente de los hechos*

*delictivos ocurridos*; esto es, dichos hechos no pueden ser considerados por "separado" del arresto y registro realizado.

Pero todavía hay más. Como expresáramos al comienzo de la ponencia, el Ministerio Fiscal *nunca* ofreció el testimonio del sargento Meléndez Zambrana como prueba en *ninguna* de las etapas del procedimiento en instancia. Dicho funcionario no declaró durante la determinación de causa probable; tampoco durante la celebración de la vista preliminar. Radicado el pliego acusatorio, el Pueblo no lo anunció ni lo utilizó como testigo de cargo para el juicio en su fondo. La defensa, en la moción de supresión de evidencia que radicara, planteó que el arresto y registro de Martínez Torres fue irrazonable toda vez que los tres agentes de la policía que arrestaron a éste no tenían "motivos fundados" para intervenir con él. El tribunal ordenó una vista para la discusión de la referida moción. En dicha vista la defensa insistió en que su planteamiento a los efectos de que Martínez Torres había sido víctima de un arresto y registro ilegal y/o irrazonable *dependía de la presentación del testimonio del sargento Meléndez Zambrana*.[5] No obstante dicho oportuno planteamiento, el Ministerio Fiscal no presentó su testimonio; tan sólo presentó los testimonios de José A. Campos y Julio Pérez Tirado, dos (2) de los tres (3) agentes que alegadamente recibieron la radiocomunicación del sargento Meléndez Zambrana. *Igual curso de acción siguió el Estado durante el juicio en sus méritos*.

En vista de ello —e independientemente de que se trate, como sostenemos, de un problema de "suficiencia" de prueba y no meramente de un error de derecho— procede que nos preguntemos si la conducta observada por el Ministerio Fiscal, al inexplicablemente negarse a presentar como testigo al sargento Meléndez Zambrana, amerita que se le brinde al Estado una segunda oportunidad.

Olvidándonos por un momento de las disposiciones de la Sec. 10 del Artículo II de nuestra Constitución, *supra*, y de la jurisprudencia interpretativa de la misma, en defensa del Minis-

---

[5] Véase esc. 2, ante.

terio Fiscal podría argumentarse que éste no contaba, naturalmente, para la fecha del primer juicio con la decisión emitida por este Tribunal en *Pueblo v. Martínez Torres I*, ante, a los efectos de que en esta clase de situaciones resulta necesario presentar el testimonio del primer agente en la cadena de información y quien es el que tiene conocimiento de los "motivos fundados". Ello, sin embargo, no constituye eximente para su actuación.

De entrada, procede que se señale que en *Pueblo v. Martínez Torres I*, ante, este Tribunal "no descubrió a América"; esto es, la referida decisión *no* estableció norma nueva alguna ni pautó derecho respecto a este punto. Dicha decisión, como expresáramos ya anteriormente, lo que hizo fue básicamente *reiterar y ratificar* lo que este Tribunal había resuelto ya en *Pueblo v. Luzón*, ante.[6]

El acto del juicio en el presente caso comenzó, según surge de los autos, *el día 18 de octubre de 1983.* La decisión en *Pueblo v. Luzón*, ante, fue emitida *el 19 de octubre de 1982*, esto es, un año antes de que se comenzara el proceso ante el tribunal de instancia.

En síntesis, ya fuera bajo las disposiciones de la citada Sec. 10 del Artículo II de nuestra Constitución y la jurisprudencia interpretativa de la misma, ya al amparo de la decisión emitida en *Pueblo v. Luzón*, ante, *el Estado sabía que venía obligado a presentar el testimonio del sargento Meléndez Zambrana en el proceso contra el aquí peticionario.* No lo hizo; no sabemos qué razones tuvo el Estado para así actuar. Dentro de la gama de posibilidades existentes para dicha incomprensible actuación te-

---

[6] En *Pueblo v. Luzón*, ante, pág. 324, expresamos, en lo pertinente, que:

"Las circunstancias expuestas confirman la legalidad de los arrestos. *El concepto de motivos fundados, consignado en la Regla 11 de Procedimiento Criminal, no es incompatible con la persecución del crimen, cuando actúen coordinada y concertadamente los agentes de la Policía.* A tal efecto, se ha sostenido que el conocimiento de cada agente —cuando trabajan cerca y se mantienen informados— es atribuible a los demás. 'Se puede establecer la existencia de causa probable para justificar un arresto sin orden, *basado en información policiaca colectiva al momento del mismo*, siendo innecesario que el oficial que lleva a cabo el arresto lo haga basándose únicamente en su conocimiento personal de las circunstancias. *Basta con que el agente de la Policía que inició la cadena de comunicaciones tenga información de primera mano.*'" (Énfasis suplido.)

nemos desde la crasa incompetencia hasta la motivación aviesa y dolosa por parte del Ministerio Fiscal.(7)

El Estado ya tuvo una "oportunidad justa" de procesar al peticionario; permitir que el Estado "ensaye" estrategias de litigación y "perfeccione" su prueba mediante intentos sucesivos con el propósito de conseguir una convicción viola la cláusula constitucional contra la doble exposición. *Tibbs v. Florida*, 457 U.S. 31, 41 (1982). En consecuencia, y por las razones antes expresadas, confirmaríamos la resolución recurrida y decretaríamos la absolución del peticionario Martínez Torres.

---

(7) Es *muy* posible que el Estado *no* presentara el testimonio del sargento Meléndez Zambrana debido a que estaba consciente que él no había tenido los "motivos fundados" requeridos por nuestra jurisprudencia para ordenar la detención y arresto del peticionario.