EL PUEBLO DE PUERTO RICO, recurrido, *v.* RAFAEL GASTÓN TORRES y JOSÉ L. VIGO CANCEL, acusados y peticionarios.

*Número:* CC-95-47          *Resuelto:* 3 de noviembre de 1995

*José L. Cobián Santiago* y *Limari Cobián Lugo*, abogados de la parte peticionaria.

## RESOLUCIÓN

A la moción de reconsideración presentada por los acusados peticionarios, *no ha lugar.*

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López emitió una opinión disidente.

(*Fdo.*) Francisco R. Agrait Lladó
Secretario General

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

A lo largo de los años que hemos desempeñado la función judicial *nunca* hemos tenido dificultad en determinar,

y decretar, la culpabilidad de un imputado de delito *siempre que* la culpabilidad de éste haya quedado demostrada conforme los dictados de nuestra Constitución, esto es, más allá de duda razonable, y *siempre que* ello haya sido demostrado luego de la celebración de un juicio justo e imparcial.

Por otro lado, *tampoco* hemos objetado la imposición de una pena, por severa que ésta pueda parecer de momento, *siempre que* la misma guarde una proporción razonable con el acto criminoso cometido por el imputado de delito; esto es, siempre que la misma no sea cruel e inusitada.

Y es que ello *no* puede ser de ninguna otra forma. Esto es, el que comete un acto prohibido por nuestro ordenamiento jurídico tiene que, y debe, sufrir las consecuencias o penas pautadas, de antemano, por dicho ordenamiento en protección del bienestar general de nuestra ciudadanía; *bienestar que, en última instancia, constituye el "norte" de todas nuestras actuaciones judiciales.*

Ahora bien, *siempre* hemos estado prestos a alzar nuestra voz de protesta ante situaciones en que se pretende separar de la sociedad a personas acusadas de delito cuya culpabilidad *no* ha sido demostrada según lo establece nuestro ordenamiento jurídico o en situaciones en que, independientemente de la calidad y suficiencia de la prueba con que cuenta el Estado contra esa persona, se ha pretendido privar de la libertad a alguien utilizando para ello medios o procedimientos que resultan violatorios del debido proceso de ley.

El afán o propósito de proteger a la ciudadanía contra la cruel ola criminal que desgraciadamente azota a nuestra Isla *no* puede servir de excusa para la violación de los principios, elementales y básicos, que establece nuestra Constitución, y demás leyes, en protección, *precisamente*, de esa ciudadanía. "El fin", después de todo, "no justifica los medios". Tampoco puede menospreciarse una "voz de

protesta". Resulta procedente recordar, a esos efectos, las elocuentes palabras, expresadas en 1945, de Martin Niemoller:

> En Alemania, los nazis primero persiguieron a los comunistas, pero yo, como no era comunista, no protesté. Más tarde vinieron tras los judíos pero como yo no era judío, no protesté. Luego, comenzaron a perseguir a los miembros de las uniones obreras, mas como yo no estaba unionado, no protesté. Más adelante la persecución se tornó contra los católicos, pero siendo yo protestante, no tuve por qué protestar. Luego vinieron por mí. Para entonces ya no había nadie que protestara por ninguno otro. Asegurémosnos de que tal cosa no vuelva a suceder.

En esta dura, pero noble, lucha por proteger a la ciudadanía de los desmanes de algunos de sus integrantes y, a la misma vez, en protección de los derechos garantizados por nuestra Constitución, *todos* los funcionarios seleccionados para participar en la misma tienen que, *por necesidad*, descargar sus funciones y obligaciones de manera valiente y responsable. Esto es, el legislador, el fiscal, el juez y, en muchas ocasiones, los ciudadanos que participan como jurados en los juicios criminales, *no* pueden rehuir sus *particulares* responsabilidades y pretender que el otro realice el trabajo que, conforme nuestro ordenamiento, le corresponde a él llevar a cabo.

Por otro lado, *tampoco* debe ser permitido que un funcionario *invada* el campo de acción que le corresponde al otro. En otras palabras, y en lo pertinente al caso ante nuestra consideración, *ni* el fiscal puede pretender que el juez haga su trabajo *ni* este último está facultado para invadir y llevar a cabo las funciones que, por ley, le corresponden al primero. Cada cual, repetimos, debe mantenerse dentro de los *parámetros* que establece la Constitución, y demás leyes, del Estado Libre Asociado de Puerto Rico.

El presente caso es un ejemplo de una situación que *no* debe acontecer y que este Tribunal *no* puede permitir que suceda. No obstante la buena intención tras las actuacio-

nes que hoy revisamos y no empece lo odioso del delito cometido, este Tribunal tiene la obligación de revisarlas y corregir la violación del debido procedimiento de ley cometida. La mayoría de los integrantes del Tribunal así no lo ha entendido procedente. *Discrepamos*; es por eso que disentimos.

I

En un allanamiento efectuado el 5 de octubre de 1994, por agentes de la Policía de Puerto Rico en una residencia localizada en el Barrio Joyuda del pueblo de Cabo Rojo, se ocupó por éstos una (1) bolsa conteniendo la droga narcótica conocida como cocaína (4.24 gramos) y diecinueve (19) bolsas conteniendo picadura de marihuana (7,615.1 gramos).

En relación con la ocupación de las referidas sustancias controladas, el Estado radicó *denuncias* contra los aquí peticionarios, Rafael Gastón Torres y José L. Vigo Cancel, en los cuales le imputó, a cada de uno de ellos y en relación con la marihuana, una (1) supuesta violación a las disposiciones del *Art. 401* de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401, y una (1) supuesta violación, a cada uno de ellos y en relación con la cocaína, de las disposiciones del citado *Art. 401* de la referida ley; esto es, posesión de *ambas* drogas con la *intención de distribuir* las mismas.

Celebrada la correspondiente vista preliminar, que establece la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, el magistrado que presidió la misma procedió a determinar causa probable contra ambos imputados, en relación con la marihuana, por violación al mencionado Art. 401, y causa probable, en relación con la cocaína, contra ambos imputados por violación al Art. 404 de la referida Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404. En otras palabras, y en relación con la cocaína,

el magistrado *redujo* el cargo de "posesión con intención de distribuir" al cargo menor de "posesión simple".

Radicados los correspondientes *pliegos acusatorios* por el Estado ante la Sala de Mayagüez del antiguo Tribunal Superior de Puerto Rico, el día pautado para el juicio las partes le informaron al referido foro judicial que habían llegado a una "alegación pre-acordada", conforme la cual el Estado estaba en disposición de *reducir* el cargo por violación al Art. 401, ante, a una infracción al Art. 404, ante, en relación con la marihuana, a cambio de que los imputados hicieran alegación de culpabilidad por violación a las disposiciones del Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, ante, *tanto* en relación con el cargo por marihuana *como* por el de cocaína.

Es importante *señalar* que, conforme admite el propio juez sentenciador,[1] dicha alegación preacordada fue aprobada por el Fiscal del Distrito de Mayagüez. En adición, procede *enfatizar* el hecho de que igualmente se acepta por dicho magistrado que el referido acuerdo *no* incluía recomendación de sentencia y el hecho de que *ni* las partes le ofrecieron al tribunal información adicional alguna respecto al caso *ni* dicho foro requirió de las partes información adicional alguna.[2] Una vez aceptado el acuerdo por el tribunal, y luego del juez examinar personalmente a los imputados y haber aceptado sus respectivas alegaciones de culpabilidad, dicho foro refirió a los imputados para "estudio e informe" respecto a la posibilidad de éstos recibir los beneficios de una sentencia suspendida.

Así las cosas, y pendiente los imputados de ser sentenciados, el tribunal de instancia emitió, *motu proprio*, con fecha de 24 de febrero de 1994 una *sorprendente* "Orden". En la misma, y en adición a lo antes señalado, el magistrado señaló que, con posterioridad al día en que los imputados hicieran alegación de culpabilidad, los "fiscales que

---

[1] Véase: "Orden", de 24 de febrero de 1995, emitida por el juez sentenciador.
[2] Íbid.

atendieron el caso nos informaron ... por primera vez que la sustancia controlada imputada en uno de los cargos (marihuana) tenía un peso que excedía las diez y ocho (18) libras"[3] (*Exhibit* VII, pág. 18) y que ese "dato" era desconocido por el tribunal al "recibir y aceptar" la alegación preacordada.

En consideración —*alegadamente*— al hecho de que dicho juez no tenía "autoridad para dejar sin efecto [la] alegación de culpabilidad presentada y aceptada" (*Exhibit* VII, pág. 19), por razón de que, si lo hacía, ello "impediría el nuevo proceso [por razón de] la defensa de doble exposición" (íd.), el foro de instancia le ordenó al Estado que le sometiera copia de su expediente *y les ordenó a las partes que mostraran causa por la cual dicho foro no debía* "considerar *como circunstancia agravante*, los hechos relacionados y en particular, la cantidad de sustancia controlada ocupada ...". Íd. Las partes comparecieron por escrito al respecto.

Conforme surge de la "minuta" que recoge los procedimientos acaecidos ante el tribunal de instancia el día de la imposición de las sentencias, el juez sentenciador —*no obstante aceptar que en el informe presentencia, que se había rendido en cuanto a ambos acusados, se recomendaba la concesión de una sentencia suspendida a éstos y del hecho de que dicha recomendación no fue objetada por el Estado en dicha vista*— no sólo le negó los beneficios de una probatoria a dichos imputados sino que dictaminó que las penas impuestas fueran cumplidas en *forma consecutiva* entre sí. Un análisis del contenido de dicha "minuta" revela que la *única* razón para esta determinación judicial lo fue la "cantidad de droga ocupada ...".

Inconforme, los aquí peticionarios acudieron ante el Tribunal de Circuito de Apelaciones, Circuito Regional de Mayagüez, imputándole al tribunal de instancia haber errado

---

[3] Para ser exactos, aproximadamente, una (1) libra más; esto es, diecinueve (19) libras.

al denegarle los beneficios de una sentencia suspendida y al "dictar las sentencias con agravantes". Dicho tribunal de apelaciones, mediante Resolución de 20 de junio de 1995,[4] se negó a expedir el auto de *certiorari* radicado. Su razón de decidir, en síntesis y en lo pertinente, fue a los efectos de que la concesión, o no, de los beneficios de una sentencia suspendida, es una decisión que es *discrecional* del juez sentenciador. Por otro lado, determinó dicho foro apelativo que "[l]a presencia de circunstancias agravantes puede ser levantada *motu proprio* por el Tribunal [sentenciador]". *Exhibit* I, pág. 5.

No conforme, *naturalmente*, con la referida determinación judicial, acudieron ante este Tribunal —vía *certiorari*— Rafael Gastón Torres y José L. Vigo Cancel en revisión de la misma. En el recurso que, a esos efectos, radicaran le imputaron al mencionado tribunal apelativo haber errado al:

> 1. ... confirmar la sentencia dictada por el Honorable Tribunal de Instancia, Sala Superior de Mayagüez, que negó los beneficios de una sentencia suspendida a los peticionarios aún cuando los informes del oficial probatorio recomendaban una libertad a prueba, el Ministerio Público y la Policía no tenían objeción a la misma.

> 2. ... confirmar la sentencia dictada por el Honorable Tribunal de Instancia, Sala Superior, el cual dictó sentencia en uno de los casos con agravantes, contra cada acusado a pesar de que no había desfilado prueba sobre los mismos. Petición, pág. 6.

Mediante Resolución, de 22 de septiembre de 1995, una Sala Especial de Verano de este Tribunal[5] denegó, de manera unánime, el recurso radicado. Inconformes, Gastón Torres y Vigo Cancel solicitaron reconsideración. El Pleno

---

[4] Panel integrado por el Juez Brau Ramírez, como su Presidente, y los Jueces Colón Birriel y Rodríguez Maldonado.

[5] Compuesta por el Juez Presidente Señor Andréu García, y los Jueces Asociados Señor Negrón García, Señor Hernández Denton y Señor Corrada Del Río.

del Tribunal entendió igualmente procedente denegar la misma. *No estamos de acuerdo.* Veamos porqué.

## II

En fecha relativamente reciente este Tribunal *reiteró* el principio de que nuestro ordenamiento jurídico "encomienda al Poder Ejecutivo el deber de implantar las leyes penales"; esto es, y dicho de manera más sencilla, son "los fiscales adscritos al Departamento de Justicia quienes tienen la función de procesar a todos los delincuentes por los crímenes y delitos de que pueda conocer bajo la autoridad y en representación del Estado Libre Asociado de Puerto Rico". *Pueblo v. Quiñones, Rivera*, 133 D.P.R. 332, 338 (1993).[6] Véanse, en adición: *Pueblo v. González Malavé*, 116 D.P.R. 578, 583 (1985); *Pueblo v. Tribunal Superior*, 94 D.P.R. 59, 65 (1967).

Como surge de la relación de hechos que hiciéramos en el presente caso —y en relación con la droga narcótica conocida como marihuana— el Estado obtuvo una determinación de causa probable, en vista preliminar, que le autorizó a radicar contra los aquí peticionarios un pliego acusatorio mediante el cual le imputó a éstos una violación a las disposiciones del Art. 401 de la citada Ley de Sustancias Controladas de Puerto Rico; esto es, posesión de la marihuana con intención de distribuir la misma. Examinados los hechos específicos del caso, dicha determinación parece ser, prima facie, correcta. Ello así ya que se trata, como hemos visto, de diecinueve (19) libras de marihuana; de la cual cantidad, ciertamente, razonablemente se puede inferir la intención de distribuir la misma.

Qué razón tuvo el Estado, representado por el Fiscal del Distrito de Mayagüez, para acceder a reducir en estas circunstancias el cargo del Art. 401, ante, al Art. 404, ante,

---

[6] 93 J.T.S. 72.

*realmente no lo sabemos.* Pueden, *naturalmente*, haber sido varias; entre ellas, y a manera de ejemplo, la de que el caso podía "perderse" por razón de la existencia de "defectos" en la orden de registro y allanamiento expedida, y diligenciada, en el mismo.

Ahora bien, independientemente de cuál haya sido la razón, *lo cierto es que el Estado accedió a reducir el cargo*; ello no obstante la existencia de las diecinueve (19) libras de marihuana. Ese hecho, de por sí, "elimina" —por decirlo así— la importancia de la "existencia" de dichas diecinueve (19) libras. Esto es, una vez el fiscal redujo el cargo, *poco importa* desde un punto de vista jurídico que se trate de una (1) libra que de diecinueve (19) libras de marihuana. Ello así ya que el Poder Ejecutivo —quien es el que tiene la obligación y responsabilidad de procesar a los infractores de las leyes— acudió ante el foro judicial y *formalmente* le "informó" a éste que, *únicamente*, contaba con prueba para sostener un caso por *posesión simple* de marihuana.

El tribunal de instancia pudo, en ese momento, haber inquirido un poco más y haberse negado a aceptar esa reducción en el delito, esto es, pudo no haber aceptado la alegación de culpabilidad por el delito menor incluido. *No* lo hizo. *Tampoco* solicitó información adicional al respecto en ese momento. Esto es, pudiendo haber inquirido sobre ello en esa etapa de los procedimientos, *no* le importó la cantidad de droga envuelta en el caso. Los acusados, por otro lado, estuvieron en disposición de declararse culpables bajo ese acuerdo; obviamente, no quisieron arriesgarse a entrar a juicio y ser encontrados culpables del delito mayor originalmente imputado.

Las partes *no* hicieron recomendación alguna al tribunal de instancia *ni* sobre la sentencia a imponerse *ni* sobre la concesión, o no, de una sentencia suspendida a los imputados de delito. Se sobreentiende, *sin embargo*, que estando el Estado, y ellos, en disposición de dar por terminado el caso *sin* la celebración de un proceso —en el que,

naturalmente, desfilaría prueba— *la concesión o no de dicho beneficio dependía exclusivamente del informe que sobre ellos rindiera el oficial probatorio.* Así es que se enfoca y se entiende esta situación, *a diario*, en la práctica de la profesión a nivel de instancia. *No* puede ser de otra manera. No habiendo desfilado prueba, el *único* "elemento" que tiene el juez para hacer esa determinación lo es·el referido informe del oficial probatorio.

Pero, *¿qué sucedió?* Los señores fiscales —de manera *ex parte,* esto es, a espaldas de la defensa— se *comunican* con el juez sentenciador y le informan de la cantidad de marihuana envuelta en el caso. Así lo admite, ingenuamente, el magistrado en la sorprendente orden que emitiera con posterioridad al momento en que los imputados se declararon culpables. *¿Qué "importancia" tiene esta situación?*

En *primer lugar,* dicha acción de parte de los fiscales y del juez sentenciador puede,·*inclusive,* ser violatoria del Código de Ética Profesional y Judicial, los cuales *prohíben* la comunicación *ex parte* de los abogados de una parte con el magistrado a cargo del caso. Véanse: Canon XXV del Código de Ética Judicial, 4 L.P.R.A. Ap. IV-A; Cánones 5 y 11 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

En *segundo lugar,* la acción del juez sentenciador al emitir la orden, luego de enterarse de dicho hecho, demuestra sin lugar a dudas que la denegatoria de probatoria a los peticionarios tuvo como base, *únicamente,* la cantidad de droga envuelta en el caso; hecho que dicho magistrado *no* debió de tomar en consideración en vista de la acción del Estado de reducir el cargo criminal, originalmente imputado, a uno de posesión simple.

Es posible, naturalmente, que el juez sentenciador —por razones de consciencia— entendiera que no podía conceder una probatoria en esas circunstancias, esto es, estando envuelta una cantidad de diecinueve (19) libras de marihuana. Si es que ello es así, entonces su deber era *relevar* a los peticionarios de la alegación preacordada

—esto es, de su alegación de culpabilidad— y señalar el caso para juicio. La razón o fundamento que brindó el juez para así no actuar —la de doble exposición— es una *no* necesariamente correcta en derecho. Véanse: *Pueblo v. Martínez Torres*, 127 D.P.R. 466 (1990); *U.S. v. Santiago Soto*, 825 F.2d 616 (1er Cir. 1987). *De todas formas*, y aun asumiendo lo contrario, *no* tenemos duda sobre el hecho de que, de los acusados haber sido apercibidos de la "forma de pensar" del juez sentenciador, éstos hubieran estado en disposición de solicitar que se les relevase de la alegación preacordada; en cuya situación no podrían, posterior-mente, levantar la defensa de doble exposición.

¿Cuál es, *en resumen*, la situación hoy ante nuestra con-sideración? No hay duda de que las personas, convictas por una infracción al Art. 404 de la Ley de Sustancias Contro-ladas de Puerto Rico, ante, cualifican, prima facie, para recibir los beneficios de una sentencia suspendida. La con-vicción en el presente caso se decretó a base de una alega-ción de culpabilidad; esto es, el juez sentenciador *no* escu-chó prueba alguna. El informe rendido por el oficial probatorio respecto a los aquí peticionarios, conforme aceptó el propio juez sentenciador, es *favorable* a ambos. El *único* fundamento del referido juez sentenciador para de-negar la probatoria, según ello surge de la "minuta" del acto de imposición de sentencia, lo es la cantidad de droga envuelta; hecho del cual obtiene conocimiento dicho juez de manera impropia y hecho que, *de todas formas*, no debió utilizar en apoyo de su determinación en vista de la acción afirmativa del Estado de reducir el cargo imputado.

Al considerar ese hecho para la imposición de la senten-cia, el juez sentenciador *invadió* el campo de acción del Ministerio Público, representante del Poder Ejecutivo, *ya que mediante su acción lo que realmente está haciendo es cuestionando la sabiduría de la determinación del Fiscal de reducir el delito de posesión con intención de distribuir a uno de posesión simple*. Ello le está *vedado* al magistrado

por cuanto, repetimos, la decisión de por cuál delito se procesa a un ciudadano le corresponde, en su origen, al Poder Ejecutivo. *Pueblo v. Quiñones, Rivera*, ante. En consecuencia, la negativa de concesión de probatoria de parte del tribunal —basada, de manera exclusiva, en la cantidad de droga ocupada— *constituye un abuso de discreción.* Como expresáramos en *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 211–217 (1990):

> Discreción, naturalmente, significa tener el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. En el ámbito judicial, sin embargo, el mencionado concepto *"no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho ...".* (Énfasis suplido.) *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964).

> No resulta fácil precisar cuándo un tribunal de justicia incurre en un abuso de discreción. No tenemos duda, sin embargo, de que el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad. Como expresáramos en *Pueblo v. Sánchez González*, ante, pág. 200, "[d]iscreción *es, pues, una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera ...".* (Énfasis suplido.)

> *El abuso de discreción se puede manifestar de varias maneras en el ámbito judicial.* Se incurre en ello, entre otras y en lo pertinente, cuando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; *cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo*; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos.

> En relación con lo antes expresado, debe mantenerse presente que —si bien es cierto que es sobre los hombros de los señores jueces de instancia sobre los cuales recae, de manera inicial y principal, la decisión de conceder o no a un convicto de delito los beneficios de una sentencia suspendida y que, de ordinario, respetaremos la decisión que en el ejercicio de esa discreción judicial ellos emitan— la amplia discreción judicial que

dichos magistrados poseen en esta clase de situaciones no es una ilimitada y absoluta. En consecuencia, este Tribunal estará siempre presto a entender en todo caso en que, a nuestro juicio, el juez de instancia haya incurrido en un abuso de discreción al denegar, o conceder, a un convicto de delito los beneficios de una sentencia suspendida. *Pueblo v. Sánchez González*, ante; *Pueblo v. Laboy*, 110 D.P.R. 164 (1980). El presente caso es un vivo ejemplo de ello.

.     .     .     .     .     .     .     .

El juez, so pretexto de ejercer su discreción, no puede olvidarse de, ni relegar a un segundo plano, los mandatos y dictados de nuestra Constitución y el de las leyes, pertinentes a la cuestión en controversia, que han tenido a bien promulgar los funcionarios de las Ramas Legislativa y Ejecutiva, debidamente electos por este Pueblo. Los tribunales estamos autorizados a interpretar las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma; o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere. Estamos impedidos, sin embargo, de obviar los mandatos claros y específicos de una ley cuando la misma es constitucionalmente válida. Debido a lo anterior es que ni los magistrados de instancia ni este Tribunal están facultados para descartar de un plumazo las disposiciones de la Ley de Sentencias Suspendidas —en específico, las del parcialmente antes transcrito Artículo 2— al enfrentarse a una situación en que deben decidir si le conceden o no los beneficios de una sentencia suspendida a un convicto de delito.

.     .     .     .     .     .     .     .

Los magistrados de instancia deben mantener presente que la determinación de conceder o no a un convicto de delito los beneficios de la Ley de Sentencias Suspendidas es una sumamente delicada e importante que requiere el ejercicio de un alto grado de sensibilidad judicial. En la misma está en juego, nada más y nada menos que la libertad de un ser humano quien no obstante haber sido convicto de la comisión de un delito, tiene por mandato legislativo —y sujeto al ejercicio de una juiciosa y sana discreción judicial— la oportunidad de regenerar su vida dentro de la libre comunidad y así convertirse en un ciudadano útil para nuestra sociedad. (Énfasis suplido y en el original.)

## III

El presente caso ciertamente causa un "mal sabor" y una gran intranquilidad en nuestra conciencia judicial. Da la *impresión* el mismo de que los representantes del Estado, temerosos de perder el caso, *engañaron* a los peticionarios para que se declararan culpables. Dicha impresión está basada en, y cobra fuerza cuando consideramos, la acción del Estado de reducir el cargo imputado, no informar al tribunal de instancia en ese momento sobre la cantidad de droga envuelta, y, luego, informarle al juez sentenciador, de manera *ex parte*, sobre la misma. Así *no* se litiga; al tribunal, se acude, *siempre*, con las manos limpias.

El que triunfa en un tribunal de justicia debe de ser aquel al que le asiste la razón, *no* el que pretende o resulta ser el más listo o "jaiba".[7]

---

[7] No entramos a discutir, *por considerarlo innecesario,* el punto de si el juez sentenciador tenía facultad para —*sin la celebración de una vista*— imponer las sentencias "con agravantes". Véanse: E.L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Colombia, Ed. Forum, 1991, Vol. III, Sec. 33.5, págs. 549–552; *Pueblo v. Castro Muñiz,* 118 D.P.R. 625, 636 (1987); *Pueblo v. González Olivencia,* 116 D.P.R. 614, 618 (1985); *Pueblo v. Santiago Acosta,* 121 D.P.R. 727, 743 (1988).